TOM HANTGES, APPELLANT/CROSS-RESPONDENT, *v.* CITY OF HENDERSON, A MUNICIPAL CORPORATION, RESPONDENT/CROSS-APPELLANT.

No. 41094

June 23, 2005                                              113 P.3d 848

---

*Harrison Kemp & Jones, LLP,* and *J. Randall Jones* and *Jennifer C. Popick,* Las Vegas, for Appellant/Cross-Respondent.

*Rawlings Olson Cannon Gormley & Desruisseaux* and *James R. Olson,* Las Vegas, for Respondent/Cross-Appellant.

Before ROSE, GIBBONS and HARDESTY, JJ.

# OPINION

By the Court, HARDESTY, J.:

In this taxpayer mandamus action, we decide whether a citizen has standing to challenge an agency's determination of blight for a redevelopment plan. Consistent with our prior holdings granting citizens the right to challenge land-use decisions, we conclude that citizens may also challenge the blight findings. We also take the opportunity to decide whether an advisory commission decision must be overturned when members to the commission have an alleged conflict of interest. Because the Nevada ethics statutes do not apply to advisory committees and because the committee members recused themselves from any decision-making, we conclude that there is no basis to overturn the actions of the redevelopment agency in its adoption of the redevelopment plan.

## FACTS AND PROCEDURAL HISTORY

Commerce Associates, LLC (Commerce), a Nevada corporation, purchased approximately 525 acres of partially developed property in Henderson, Nevada (Tuscany Property). Shortly thereafter, Commerce requested the City of Henderson (Henderson) to designate the Tuscany Property for redevelopment evaluation. Henderson adopted a resolution directing the City of Henderson Redevelopment Agency (Redevelopment Agency) to evaluate the Tuscany Property. During this time, Commerce and the Redevelopment Agency also drafted a proposed Memorandum of Understanding (MOU), which memorialized an agreement between Commerce and the Redevelopment Agency to jointly evaluate "Tuscany Hills" (the 525-acre Tuscany Property plus an additional 325 acres of surrounding property) for designation as a redevelopment area. The Redevelopment Agency hired an independent consultant to conduct a study of the proposed redevelopment area, and the consultant concluded that Tuscany Hills was blighted.

The MOU between the Redevelopment Agency and Commerce was approved by the Henderson Redevelopment Agency Advisory Commission (Advisory Commission), a commission established to act in an advisory role to the Redevelopment Agency. During that meeting, the Chairman of the Advisory Commission, Barry Fieldman, and member Robert Unger recused themselves before the MOU was discussed. Fieldman and Unger were members of both the Advisory Commission and Makena Entertainment, LLC, the managing member of Commerce. During all subsequent voting

by the Advisory Commission regarding business with Commerce, Fieldman and Unger were not present.

The Tuscany Hills Redevelopment Plan (Redevelopment Plan) was approved by the Redevelopment Agency in January 2001 and by the Henderson City Council (City Council) in March 2001. Tom Hantges, a taxpayer and citizen of Henderson, Nevada, who later filed a complaint for a writ of mandamus in this action, did not challenge the adoption of the Redevelopment Plan or the findings of blight.

Approximately a year after the adoption of the Redevelopment Plan, the Owner Participation Agreement (OPA) between Commerce and the Redevelopment Agency was finalized and approved by the Advisory Commission. The OPA was forwarded to the City Council and approved in April 2002. The purpose of the OPA is to effectuate the Redevelopment Plan.

Approximately a month after the City Council approved the OPA, Hantges filed a writ petition in the district court. Hantges challenged the OPA arguing that Tuscany Hills is not blighted and asserting that a conflict of interest exists given Fieldman's and Unger's dual roles on the Advisory Commission and in the managing member of Commerce. Henderson moved to dismiss the petition on several grounds, including that Hantges lacked standing to challenge the OPA. The district court dismissed the petition; however, the court later set aside the dismissal with respect to Hantges' conflict of interest challenge. Subsequently, the court concluded that no conflict of interest existed and denied the petition. This appeal followed.

## DISCUSSION

### Standing

Henderson argues that this appeal and cross-appeal are moot because Hantges had no standing to bring the underlying writ proceeding. NRS 279.609, however, provides for actions questioning the validity of an agency's findings or determinations in connection with a redevelopment plan. Although this statute does not expressly address who can contest the agency findings, the statute has a protective purpose. We therefore interpret it to "avoid meaningless or unreasonable results, and . . . 'liberally construe[ ] [it] in order to effectuate the benefits intended to be obtained.' "[1] Consequently, contrary to Henderson's argument that only property owners have standing under NRS 279.609 to challenge an agency's

---

[1]*Edgington v. Edgington,* 119 Nev. 577, 583, 80 P.3d 1282, 1287 (2003) (footnote omitted) (quoting *Colello v. Adminstrator, Real Est. Div.,* 100 Nev. 344, 347, 683 P.2d 15, 17 (1984)).

findings, we conclude that the statute confers standing on citizens to challenge these findings as well. This conclusion is consistent with our prior rulings that citizens have standing to challenge land-use decisions.[2]

We therefore conclude that Hantges had citizen standing to question the redevelopment plan decision and to bring his mandamus challenge. Because he was an aggrieved party in the court below, standing is not now an issue on appeal.[3] We deny Henderson's motion to dismiss this appeal.[4]

*Timeliness of the petition*

Hantges also argues that the district court erred in finding that his mandamus challenge was time-barred by NRS 279.609.

NRS 279.609(3) provides that "[a]ny of the findings or determinations of the agency or the legislative body in connection with [a redevelopment] plan, may only be brought after the adoption of the plan or amendment or within 90 days after the date of adoption of the ordinance adopting or amending the plan." This court has specifically held that a property owner may not challenge a redevelopment plan's finding of blight after NRS 279.609's 90-day deadline has expired.[5]

Here, the City Council voted to adopt the Redevelopment Plan in March 2001. Instead of bringing a challenge within 90 days, Hantges filed a petition for a writ of mandamus in May 2002, almost a year after the 90-day deadline. Therefore, the district court did not err in finding that Hantges' claim was time-barred.

Hantges attempts to avoid this time bar by arguing that the Redevelopment Agency's approval of the OPA modified the Redevelopment Plan, and therefore started the statutory 90-day time frame anew.

NRS Chapter 279 allows municipalities to amend redevelopment plans and sets forth steps to amend a plan. Amendments are required for actions that "constitute a material deviation" from or that "alter significantly" the redevelopment plan.[6] In *Las Vegas Downtown Redevelopment v. Crockett,* we held that while material

---

[2]*See, e.g., City of Reno v. Goldwater,* 92 Nev. 698, 700, 558 P.2d 532, 533 (1976).

[3]*See* NRAP 3A(a).

[4]We are unpersuaded by Henderson's additional bases for dismissal presented in the motion to dismiss.

[5]*Las Vegas Downtown Redev. Agency v. Pappas,* 119 Nev. 429, 76 P.3d 1 (2003).

[6]NRS 279.608(6).

deviations from a redevelopment plan require formal amendment, mere administrative interpretations of the redevelopment plan do not require a formal amendment.[7] "[R]edevelopment that is consistent with the redevelopment plan's express language or a liberal construction of that language does not require plan amendment because there is no deviation from or change to the plan's contours."[8]

Here, the OPA does not materially alter or deviate from the Redevelopment Plan but rather effectuates the general purposes of the plan; therefore, a formal amendment to the Redevelopment Plan was not required. Because the OPA is not an amendment to the Redevelopment Plan, any challenges to the OPA or the Redevelopment Plan must have been brought within the initial 90-day period.

We therefore conclude the district court properly denied Hantges' petition for a writ of mandamus because the petition sought to litigate the merits of the findings of blight, an issue that was barred by the statute of limitations.

## Conflict of interest

While we recognize that the petition was time-barred, we take this opportunity to discuss the effects of a conflict of interest on members of advisory commissions within this state. In his writ petition, Hantges argued that two members of the Advisory Commission, Barry Fieldman and Robert Unger, maintained a direct interest in the OPA at the time the Advisory Commission adopted the OPA, which he argues tainted the subsequent redevelopment plan determinations. We conclude that the district court did not abuse its discretion in denying Hantges' petition, based upon his assertion of a conflict of interest.[9]

First, we note that Fieldman and Unger were not involved in any manner in the approval of the OPA. The December 2000 Advisory Commission meeting was held to discuss the MOU between the Redevelopment Agency and Commerce, and Fieldman and Unger recused themselves before the discussion began. During the public meeting to vote on approval of the MOU, neither Unger nor Fieldman were present, and the vote passed. Similarly, the Advisory Commission voted to approve the OPA with Commerce without the attendance of either Unger or Fieldman. Based on our review of the record, it appears that neither Fieldman nor Unger were pres-

---

[7]117 Nev. 816, 827-28, 34 P.3d 553, 561 (2001).

[8]*Id.* at 828, 34 P.3d at 561.

[9]*See DR Partners v. Bd. of County Comm'rs,* 116 Nev. 616, 621, 6 P.3d 465, 468 (2000) (review of a district court's decision to grant or deny a writ petition is for abuse of discretion).

ent for any Advisory Commission discussions leading up to the vote on the OPA or during any voting on the OPA.

Moreover, even if Unger and Fieldman had been involved in the OPA or Redevelopment Plan approval, their positions on the Advisory Commission would not taint the voting. NRS 281.411 through 281.581 create a statutory framework by which public officials may be held accountable for actions taken despite a conflict of interest. The terms "public officer" and "public office" are defined in NRS 281.4365, which states in relevant part:

> 2. "Public officer" does not include:
>
> . . .
>
> (c) Any member of a board, commission or other body whose function is advisory;
>
> . . .
>
> 3. "Public office" does not include an office held by:
>
> . . .
>
> (b) Any member of a board, commission or other body whose function is advisory.

The function of the Advisory Commission is to act in an advisory capacity to the Redevelopment Agency. The Commission does not possess legislative or fiscal power to bind Henderson or the Agency, and its sole function is to make recommendations to the Agency. Because its purpose is advisory, the Commission fits within the exception to the definition of "public officer" in NRS 281.4365. Therefore, no member of the Advisory Commission is a "public officer" for the purposes of NRS Chapter 281, and Hantges' conflict of interest argument necessarily fails.

Courts that have considered similar conflict of interest issues have reached opposing conclusions. In *Chrobuck v. Snohomish County,* the Washington Supreme Court held that an appearance of impropriety in a land planning decision creates a deprivation of due process, noting:

> the members of the planning commission . . . must so far as practicable . . . be open minded, objective, impartial, and free of entangling influences or the taint thereof. They must be capable of hearing the weak voices as well as the strong. To permit otherwise would impair the requisite public confidence in the integrity of the planning commission and its hearing procedures.[10]

The *Chrobuck* court concluded that a planning commission's denial of an opportunity for counsel to cross-examine expert witnesses testifying at a commission hearing "inescapably cast an aura of

---

[10]480 P.2d 489, 496 (Wash. 1971) (citation omitted).

improper influence, partiality and prejudgment over the proceedings thereby creating and erecting the appearance of unfairness."[11] Similarly, in *Stigall v. City of Taft,* the California Supreme Court concluded that a city council's award of a contract to a council member, who had tendered his resignation just prior to the contract vote, had to be overturned despite the council member's resignation.[12] The court recognized that the negotiations, discussions, and planning which occur prior to a final decision are all part of the agreement and that conflict of interest statutes are designed to apply to any situation that would preclude officials from exercising absolute loyalty to the best interests of the city.

However, courts have also held that an alleged conflict can be cured by independent review and approval of the possibly tainted decision. In a Hawaii case, *Waikiki Resort Hotel v. City & County of Honolulu,* the issue was whether to invalidate an administrative appeal board's building permit approval, given a board member's conflict of interest.[13] The plaintiff in that case challenged the permit because one board member was also serving as the general contractor to construct the building contemplated by the permit.[14] In affirming the grant of the permit, the court recognized that with nine board members and unanimous board approval, there were enough votes to support the decision even without the conflicted member's vote; therefore, the court affirmed the board's actions.[15] Likewise, the Fifth Circuit Court of Appeals has concluded that allegedly biased actions taken by a city can be cured by the state legislature's independent review and approval.[16]

In this case, the recusal of both Fieldman and Unger from any discussion or voting precludes an appearance of impropriety or unfairness. Unlike the situation in *Stigall,* the Commission considered the OPA multiple times, without the influence of Fieldman or Unger. Further, the two commission members were not involved in any negotiations, discussions, or planning involving the OPA or business between the Redevelopment Agency and Commerce. More importantly, only the vote of the Redevelopment Agency, not the Advisory Commission, could approve the OPA. Even when the Commission voted just to recommend the OPA to the Redevelopment Agency for its final approval, Fieldman and Unger were not

---

[11]*Id.*

[12]375 P.2d 289, 291 (Cal. 1962).

[13]624 P.2d 1353 (Haw. 1981).

[14]*Id.* at 1370.

[15]*Id.* at 1370-71.

[16]*Green v. City of Stuart,* 81 F.2d 968 (5th Cir. 1936).

on the Commission, and four of the six voting members voted in favor of recommending the OPA to the Agency.

While we share the concerns expressed in *Chrobuck* and *Stigall*, we determine that it would be impractical to overturn final board decisions when advisory board members have alleged conflicts of interest, yet recuse themselves from any discussions or voting on the matter. Citizen participation on advisory committees should be encouraged in our state, where a likelihood exists that advisory committee members could have potential conflicts of interest. Therefore, by expressing a conflict and recusing him or herself from any decision making, voting, or discussions, an advisory committee member avoids the appearance of impropriety. We do not reach the effect of a conflict of interest of a board member on a board that has final approval authority.

The district court did not abuse its discretion in determining that Hantges failed to carry his burden of proof that a conflict existed with the Advisory Commission at the time it approved the OPA and in denying the petition on this basis. We affirm the district court's order denying Hantges' petition for a writ of mandamus.

Rose and Gibbons, JJ., concur.