OPINION
By the Court,
Parraguirre, J.:
Appellants, David and Sandra Mathewson, Jack and Mary Knowles, and Shirley Fraser — all of whom own property along Mesa Drive — and the Mesagate Homeowners’ Association (collectively “Mesagate”) petitioned the district court for a writ of mandamus revoking respondent City of Fernley’s building permit for a water treatment plant. The district court denied Mesagate’s writ petition, concluding that Mesagate’s alleged harm did not support extraordinary writ relief. Mesagate now appeals the order denying its writ petition.
On appeal, the City contends that, although the district court correctly denied Mesagate’s writ petition, the district court should have based its decision on Mesagate’s lack of a legally recognized interest in having the building permit revoked and its failure to exhaust its administrative remedies. Although we believe that the Mesagate property owners have a legally recognized interest in this case, we agree with the City that Mesagate failed to exhaust its administrative remedies.
Under NRS 278.0235, parties are permitted to challenge in district court “any final action, decision or order of any governing body, commission or board.” In our view, the approval of the building permit at issue in this case did not constitute a “final ac *1094 tion, decision or order’ ’ when considered in light of a second provision, NRS 278.3195.
NRS 278.3195(1) requires a governing body to adopt an ordinance providing any person who is aggrieved by an administrative land use decision the right to appeal that decision to the governing body. The City has complied with that mandate by establishing provisions set forth in the Fernley Development Code that create and provide for an administrative appeal to the Board of Appeals, comprised of governing body appointees. Once the governing body’s review has been completed, NRS 278.3195(4) provides for a process of judicial review.
Applying those provisions to this case, we conclude that Mesagate’s petition for a writ of mandamus was not the proper vehicle for challenging the issuance of the water treatment plant’s building permit. Mesagate should have challenged the permit’s legality with the Board of Appeals established by the Fernley Development Code. By not challenging the building permit in this manner, Mesagate failed to exhaust its administrative remedies, which precludes our consideration of the merits of this appeal.[1]

FACTS AND PROCEDURAL HISTORY

The Environmental Protection Agency (EPA) has mandated that the City reduce the arsenic concentration in its drinking water by July 2009. To comply with the EPA’s mandate, the City has decided to construct a water treatment plant on a vacant lot at the end of Mesa Drive, a dead-end street in west Fernley. Mesagate opposes the construction of the water treatment plant in its currently planned location, claiming that increased hazardous traffic and airborne carcinogens from the plant will cause property values to decline.

Building permit

In August 2006, the City awarded a design contract to Camp Dresser & McKee, Inc. (CDM). CDM completed construction plans for the water treatment plant several months later.
Based on CDM’s plans, three separate city officials — the Fernley Community Development Director, the Fernley Building Official, and the Fernley City Plans Examiner — approved the project, concluding that CDM’s plans complied with the City’s Development Code, the International Building Code, and all other “applicable codes.” Accordingly, Fernley’s Community Development Director, Terry Gilbert, sent the City a July 2007 “Approval Notice-Design Review” letter.
*1095 Gilbert’s approval letter conditioned any future Certificate of Occupancy for the plant on the satisfaction of 37 additional requirements. Among other things, the City was required to maintain compliance with Fernley’s Development Code, obtain approval from the Bureau of Safe Drinking Water, and meet the requirements of the North Lyon County Fire Protection District.[2] In addition, Gilbert’s letter noted that “[a] change or an increase in the function of this property served by an existing access or street may require a new right-of-way occupancy permit application and approval.” Finally, the letter stated that “[a]ll improvements shown on the plans submitted with the building permit must be constructed in accordance with the conditions of approval spelled out in this letter, or bonded per City of Fernley regulations.”
After receiving Gilbert’s design approval letter and awarding K.G. Walters Construction a construction contract, the City of Fernley Public Works Department then applied for and received a building permit on October 4, 2007, to begin construction on the water treatment plant. In the same month, several city officials (including Gilbert) approved conformed drawings of the water treatment plant plans. The signature page of these drawings included a handwritten statement, apparently added by Gilbert, which noted that “a 60 foot right-of-way is required from the property line of the [water treatment plant] to Main Street. The Planning Commission could grant a variance to the requirement through a Public Hearing. In either case, the [right-of-way] must be resolved before [a Certificate of Occupancy] can be authorized.”

District court proceedings

In November 2007, Mesagate filed a petition for writ of mandamus in the district court contending that the City had violated several statutory and building code requirements during the review and approval process for the plant. In particular, Mesagate argued that the plant’s plans violated City Development Code Section 44.020 by calling for a “dedicated right-of-way [Mesa Drive] of . . . less than sixty feet.” Mesagate also claimed more generally that “[t]he thirty-seven . . . conditions of the Approval Notice-Design Review have not been met.” Based on these allegations, Mesagate requested that the district court revoke the City’s building permit.
After the City filed an opposition to Mesagate’s petition, the district court held a hearing to address the petition’s merits. At the hearing, the district court initially limited its inquiry to the scope of Mesagate’s alleged harm, and the court then heard testimony *1096 from both parties’ witnesses on that issue. During the hearing, the district court doubted whether the alleged building and fire code violations were ripe for consideration since any such violations would have to be remedied before the plant could be opened. Nonetheless, the court also stated that “I think we don’t even really need to hear testimony to know that the [members of Mesagate] are damaged ... no one wants municipal water treatment plants ... or jails, nor police stations, homeless shelters in their neighborhood. No one does. Because it does affect the property values. There’s no question of that.”
Although the district court recognized the possibility of a remedy by another legal route, such as an action for inverse condemnation, the court ultimately doubted that it could issue a writ of mandamus based on Mesagate’s alleged harm, since the harm to the citizens of Fernley in revoking the water treatment plant building permit would be much worse. In particular, the district court noted that:
without the [water treatment plant] being built ... on time as required by the federal government, several thousands of citizens of Fernley would be harmed. On one hand a great deal of harm would exist to thousands of people within the City . . . and on the other hand the Court weighs the speculative harm, for an exact dollar amount, to one or possibly four homeowners.
As a result, the district court denied Mesagate’s writ petition. This appeal followed.

DISCUSSION

On appeal, Mesagate challenges the district court’s order denying its petition for a writ of mandamus revoking the City’s building permit for the water treatment plant in light of several apparent building code violations. By contrast, the City argues that Mesagate’s writ petition is nonjusticiable for two reasons: Mesagate lacks a legally recognized interest in this litigation and, in the alternative, Mesagate has failed to exhaust its administrative remedies.
Although we conclude that Mesagate has a legally recognized interest in this case, we agree with the City’s secondary argument that Mesagate has failed to exhaust its administrative remedies. We therefore affirm the district court’s judgment denying Mesagate’s writ petition, albeit for reasons different than those set forth by the district court.[3]

*1097
Justiciability

We have expressly defined a “justiciable controversy” as a “ripe dispute between two interested and adverse parties, in which the moving party’s interest is legally recognized.”[4] Although we have only applied this definition in two contexts — an administrative complaint and a complaint for declaratory relief — based on the following, we believe that it applies with equal force to a petition for writ of mandamus.[5]

Mesagate’s legally recognized interest

In the context of a petition for a writ of mandamus, the question whether a party has a legally recognized interest is essentially a question of whether the party has a beneficial interest in obtaining writ relief. Indeed, this court has stated that “[t]o establish standing .. . the petitioner must demonstrate a ‘beneficial interest’ in obtaining writ relief.”[6] A “beneficial interest” is a “ ‘direct and substantial interest that falls within the zone of interests to be protected by the legal duty asserted.’ ”[7] In the absence of a beneficial interest, a writ petition must be denied since “ ‘the petitioner will gain no direct benefit from its issuance and suffer no direct detriment if it is denied.’ ”[8]
In this case, Mesagate has challenged the City’s issuance of a building permit for the new Fernley water treatment plant. As a result of being property owners, citizens, and taxpayers within the City of Fernley, the Mesagate property owners argue that they have standing to challenge that permit. For support, Mesagate cites our decision in Hantges v. City of Henderson, in which we concluded that nonproperty-owning citizens have standing to bring a petition *1098 for a writ of mandamus questioning “the validity of an agency’s findings or determinations in connection with a redevelopment plan” under NRS Chapter 279.[9]
In Hantges, we based standing primarily on NRS 279.609, which recognizes and places time limitations on the availability of actions questioning the validity of redevelopment plans.[10] We also noted, however, that our conclusion was “consistent with our prior rulings that citizens have standing to challenge land-use decisions.”[11]
Here, although Mesagate’s planning and zoning dispute is governed by NRS Chapter 278, not NRS Chapter 279 as in Hantges, NRS Chapter 278 includes a provision similar to one in NRS Chapter 279 recognizing and placing time limitations on actions “with respect to my final action, decision or order of any governing body, commission or board authorized by NRS 278.010 to 278.630.”[12] That provision includes Mesagate’s specific concern here: the issuance of an allegedly unlawful building permit under NRS 278.610.[13]
Based on the similarity of these provisions, we conclude that Hantges’ reasoning extends to NRS Chapter 278 and that Mesagate has a beneficial (and, therefore, legally recognized) interest in challenging the building permit in question. Indeed, because NRS Chapter 278 plans for the possibility of actions and petitions such as Mesagate’s, that chapter implicitly recognizes Mesagate’s interest in government compliance with building code requirements.[14]

Exhaustion of administrative remedies

Even though Mesagate has a legally recognized, beneficial interest in this case, the City challenges Mesagate’s use of a petition for a writ of mandamus as its vehicle for obtaining relief. Specifically, the City argues that Mesagate’s writ petition is nonjust *1099 iciable because Mesagate has failed to exhaust its administrative remedies.[15]
As we have recognized, “a person generally must exhaust all available administrative remedies before initiating a lawsuit, and failure to do so renders the controversy nonjusticiable.”[16] Indeed, “[t]he exhaustion doctrine gives administrative agencies an opportunity to correct mistakes and conserves judicial resources, so its purpose is valuable; requiring exhaustion of administrative remedies often resolves disputes without the need for judicial involvement.”[17]
Here, in support of its exhaustion argument, the City cites a provision of the International Building Code, adopted as part of the Fernley Development Code, which establishes a Board of Appeals for purposes of hearing and deciding appeals of decisions made by building officials.[18] According to the City, Mesagate’s petition should be denied because Mesagate has failed to bring its claim before the Board of Appeals, as required by the International Building Code, and exhaust this administrative remedy prior to seeking relief with the district court. Mesagate counters that such an appeal was not required because the building permit at issue approved construction plans that violated the City’s Comprehensive Plan and Development Code, which is not necessarily in violation of the construction materials and techniques regulated by the International Building Code. Therefore, Mesagate alleges that “[t]hese violations could not be reviewed or waived by any Board of Appeals and it would be futile to ask the Board to do so.”
We believe that both parties have analyzed this issue incorrectly. As discussed above, NRS Chapter 278 includes a provision — NRS 278.0235 — which places time limitations on district court proceedings that challenge “any final action, decision or order of any *1100 governing body, commission or board,’ ’ including the issuance of an unlawful building permit under NRS 278.610.[19] Thus, in our view, the vital question on appeal is whether the approval of the building permit for the water treatment plant constituted a “final action, decision or order” under NRS 278.0235, and if not, whether Mesagate was required to appeal that approval to the Board of Appeals established by the International Building Code.
This court has previously discussed NRS 278.0235’s “final action, decision or order” language only once.[20] Specifically, in League to Save Lake Tahoe v. Tahoe Regional Planning Agency, the court concluded that the actual issuance of a special use permit could constitute a final action if agency review does not occur because the agency does not reach a decision.[21]
After League to Save Lake Tahoe was decided in 1977, however, the Legislature adopted NRS 278.3195(1), which requires every planning and zoning “governing body” to “adopt an ordinance providing that any person who is aggrieved by a decision of . . . [a]ny other person appointed or employed by the governing body who is authorized to make administrative decisions regarding the use of land, may appeal the decision to the governing body.” In addition, NRS 278.3195(4) entitles any person who is aggrieved by a decision of the governing body to seek judicial review after the governing body’s review process has been completed.[22]
Thus, although zoning and planning decisions have previously been presented to the district court through a petition for a writ of mandamus, NRS 278.3195 has changed this procedure significantly.[23] Under NRS 278.3195’s new procedure, a right of review *1101 has been created in the district court — and that right only comes into existence after the governing board’s decision has been properly challenged through, and reviewed by, the governing board’s internal appellate procedure.
In light of NRS 278.3195, we conclude that there cannot be a “final action” — as that phrase is used in NRS 278.0235 — until after the governing body has reviewed and rejected an administrative appeal. Thus, in this case, Mesagate’s petition for a writ of mandamus is not the proper vehicle for challenging the issuance of the water treatment plant’s building permit. Instead, Mesagate should have challenged the permit’s legality with the Board of Appeals established by the International Building Code and adopted in the Fernley Development Code.[24] By not doing so, Mesagate failed to exhaust its administrative remedies, thereby precluding any further consideration of the merits of this appeal.[25]

CONCLUSION

Mesagate has failed to exhaust its administrative remedies by not appealing the City’s building permit to the Board of Appeals established by the Fernley Development Code pursuant to NRS 278.3195. Thus, judicial review is improper, and we deem the issues raised by Mesagate’s petition for a writ of mandamus to be nonjusticiable. Accordingly, we affirm the district court’s denial of Mesagate’s writ petition.
Hardesty and Douglas, II., concur.

 See Allstate Ins. Co. v. Thorpe, 123 Nev. 565, 571, 170 P.3d 989, 993 (2007).

 The City was specifically required to meet the Fire Protection District requirements “prior to the issuance of a building permit.”

 See Sengel v. IGT, 116 Nev. 565, 570, 2 P.3d 258, 261 (2000) (affirming district court’s decision even though that decision was based on the wrong *1097 legal standard because it reached the correct result); Rosenstein v. Steele, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987) (“[T]his court will affirm the order of the district court if it reached the correct result, albeit for different reasons.”).

 UMC Physicians v. Nev. Serv. Emp. Union, 124 Nev. 84, 93, 178 P.3d 709, 715 (2008).

 Cf. id.; Doe v. Bryan, 102 Nev. 523, 525, 728 P.2d 443, 444 (1986) (examining the meaning of “justiciable controversy” in the context of a complaint for declaratory relief).

 Secretary of State v. Nevada State Legislature, 120 Nev. 456, 460-61, 93 P.3d 746, 749 (2004); see NRS 34.170 (“This writ. . . shall be issued upon affidavit, on the application of the party beneficially interested”)

 Secretary of State, 120 Nev. at 461, 93 P.3d at 749 (quoting Lindelli v. Town of Anselmo, 4 Cal. Rptr. 3d 453, 461 (Ct. App. 2003)).

 Id. (quoting Waste Management v. County of Alameda, 94 Cal. Rptr. 2d 740, 747 (Ct. App. 2000)).

 121 Nev. 319, 322, 113 P.3d 848, 850 (2005).

 Id.; see NRS 279.609 (“Any action questioning the validity of . . . [a]ny redevelopment plan or amendment to a redevelopment plan . . . may only be brought after the adoption of the plan or amendment or within 90 days after the date of adoption of the ordinance adopting or amending the plan”).

 Hantges, 121 Nev. at 323, 113 P.3d at 850; see City of Reno v. Goldwater, 92 Nev. 698, 700, 558 P.2d 532, 533 (1976).

 NRS 278.0235 (emphasis added).

 Id.

 As the homeowners have a beneficial interest in relief and since the City did not separately raise the issue of whether the Mesagate Homeowners’ Association has associational standing, we do not address whether the Mesagate Homeowners’ Association has a beneficial interest in the proceeding.

 See Allstate Ins. Co. v. Thorpe, 123 Nev. 565, 571, 170 P.3d 989, 993 (2007).

 Id.

 Id. at 571-72, 170 P.3d at 993-94.

 “ General. In order to hear and decide appeals of orders, decisions or determinations made by the building official relative to the application and interpretation of this code, there shall be and is hereby created a board of appeals.” Int’l Bldg. Code § 112.1 (2003).
“Limitations on authority. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply or an equally good or better form of construction is proposed. The board shall have no authority to waive requirements of this code.” Int’l Bldg. Code § 112.2 (2003).

 Emphasis added.

 League to Save Lake Tahoe v. Tahoe R.P.A., 93 Nev. 270, 563 P.2d 582 (1977) (analyzing analogous language under former NRS 278.027), overruled on other grounds by County of Clark v. Doumani, 114 Nev. 46, 952 P.2d 13 (1998).

 Id. at 274, 563 P.2d at 584. Later, in County of Clark v. Doumani, this court explained that the “final action” language of NRS 278.0235 is qualified by the additional clause requiring that the action be challenged “within 25 days after the date of filing of notice of the final action, decision or order with the clerk or secretary of the governing body, commission or board.” 114 Nev. at 50-52, 952 P.2d at 15-17 (emphasis added). In light of this language, the Doumani court concluded that “the limitation period does not begin to run when a final decision is rendered!; flather, the limitation period begins to run only when notice of the final decision is filed.” Id. at 51, 952 P.2d at 16. Thus, Doumani overruled certain language in League to Save Lake Tahoe suggesting that the limitation period began to run at the time the decision was made. Id. However, Doumani did not overrule League to Save Lake Tahoe’s understanding of what constitutes a “final action.”

 Specifically, NRS 278.3195(4) provides that “[a]ny person who (a) [h]as appealed a decision to the governing body in accordance with an ordinance adopted pursuant to [NRS 278.3195(1)]; and (b) [i]s aggrieved by the decision of the governing body, may appeal that decision to the district court.”

 Kay v. Nunez, 122 Nev. 1100, 1104-05, 146 P.3d 801, 804-05 (2006).

 Although Mesagate argues that an administrative appeal and judicial review to the Board of Appeals would be futile and therefore unnecessary (alleging that the International Building Code is limited to reviewing violations of building construction and techniques), this argument lacks merit. Contrary to Mesagate’s argument, the validity of a building permit may be challenged under section 105.4 of the International Building Code, which states that, “[t]he issuance or granting of a permit shall not be construed to be a permit for, or an approval of, any violation of any of the provisions of this code or any other ordinance of the jurisdiction. Permits presuming to give authority to violate or cancel the provisions of this code or other ordinances of the jurisdiction shall not be valid.” Int’l Bldg. Code § 105.4 (2003) (emphasis added). Thus, under this section, the Board of Appeals is free to interpret any provision of the Fernley Development Code and could presumably revoke an illegal or unlawful building permit under the proper circumstances. See NRS 278.3195(1). Therefore, even though Mesagate challenges the building permit based on alleged violations of the Fernley Development Code’s planning and zoning provisions, an appeal to the Board of Appeals would not be futile.

 See Allstate Ins. Co. v. Thorpe, 123 Nev. 565, 571, 170 P.3d 989, 993 (2007).