**131 Nev., Advance Opinion 78**

IN THE SUPREME COURT OF THE STATE OF NEVADA

PATTI E. BENSON,
Appellant,
vs.
STATE ENGINEER OF THE STATE OF
NEVADA, OFFICE OF THE STATE
ENGINEER; AND DIVISION OF
WATER RESOURCES, DEPARTMENT
OF CONSERVATION AND NATURAL
RESOURCES,
Respondents.

No. 65833

FILED

SEP 24 2015



Appeal from a district court order dismissing a petition for judicial review in a water law matter. Seventh Judicial District Court, Eureka County; Gary Fairman, Judge.

*Affirmed.*

Schroeder Law Offices, P.C., and Laura A. Schroeder, Therese A. Ure, and Matthew J. Curti, Reno,
for Appellant.

Adam Paul Laxalt, Attorney General, and Jerry M. Snyder, Senior Deputy Attorney General, Carson City,
for Respondents.

15-28890

BEFORE THE COURT EN BANC.

## OPINION

By the Court, CHERRY, J.:

The question presented in this appeal is whether a party aggrieved by the cancellation of her water permit must exhaust administrative remedies with the State Engineer when the State Engineer is not statutorily authorized to provide the party's preferred remedy. We hold that NRS 533.395(2) requires a party aggrieved by the cancellation of a water permit to exhaust all available administrative remedies before seeking judicial review, even when the remedy that the State Engineer is authorized to provide is not the remedy that the party seeks.

## FACTS AND PROCEDURAL HISTORY

Joseph Rand purchased property in Eureka County, which he used for farming. A water permit with an appropriation date of 1960 benefited the property. Rand died on October 17, 2008, survived by his wife, Ellen. That same month, the Joseph L. and Ellen M. Rand Revocable Living Trust was created, and the trust managed the farming property. An agent, presumably acting on behalf of the trust,[1] applied for a water right permit at a new well head location with the State Engineer

---

[1]The application for permission to change point of diversion lists the applicant as Joseph L. Rand and Ellen M. Rand. The underlying petition for judicial review also states that the agent was acting on behalf of Joseph L. Rand and Ellen M. Rand. However, as Joseph Rand was deceased when the application was filed and the trust was managing the farming property, we presume that the agent was acting on the trust's behalf.

on December 10, 2008. According to the application, the agent intended to divert water from an underground source via a newly drilled well. The new water rights were necessary because the previous well did not produce sufficient water. The State Engineer conditionally authorized the new permit to appropriate 632 acre-feet annually for irrigation and domestic use from the Diamond Valley Hydrographic Basin. The permit required proof of completion of the new well, proof of beneficial use of the water, and a supporting map to be filed with the State Engineer within one year. The permit reflected the original appropriation date of 1960.

Due to financial constraints, the trust was unable to finish drilling the well by 2010. Consequently, Ellen, on behalf of the trust, sought an extension to complete the work and file the requisite proof with the State Engineer. The State Engineer granted the trust's request and extended the time for completion by one year. The State Engineer granted the same request again in 2011 and 2012.

Ellen died on March 31, 2013. Following her death, Patti Benson, Joseph and Ellen's daughter, inherited the farming property and water rights. On July 11, 2013, the State Engineer sent a "final notice" to the trust reminding it and the Rands that they were required to file proof of completion, proof of beneficial use, and a map. The notice stated that if they did not file the required documents or request an extension within 30 days, the permit would be canceled.

Benson recorded the quitclaim deed with the Eureka County recorder's office on July 24, 2013. The record does not reflect that Benson ever filed a report of conveyance with the State Engineer, as required by NRS 533.384. On September 11, 2013, the State Engineer canceled the

water permit for failure to comply with its terms and sent notice to the Rands. The notice also advised that, within 60 days, the cancellation could be appealed by filing a written request for a review at a public hearing before the State Engineer.

Instead of requesting administrative review, Benson filed the underlying petition for judicial review in the district court. Her petition sought an order vacating the State Engineer's decision to cancel the permit. In her petition, Benson argued that the State Engineer did not allow her enough time to file a report of conveyance under NRS 533.384.[2] Because notice of the potential cancellation of the water permit was not provided to her as the owner of the water rights, Benson alleged, the State Engineer's cancellation of the permit was erroneous.[3] Further, Benson claimed that the record evidence, which she was barred from presenting to the State Engineer in a contested hearing prior to cancellation, proved that the State Engineer's decision was clearly erroneous.

The State filed a motion to dismiss Benson's petition, arguing that NRS 533.395(4) required the district court to dismiss Benson's petition for failure to exhaust administrative remedies and seek review of the permit cancellation at a public hearing before the State Engineer. In

[2]NRS 533.384 does not specify a time frame following the conveyance in which the report must be filed with the State Engineer.

[3]However, Benson conceded during oral argument before this court that she had actual notice of the pending cancellation before expiration of the 30-day period to seek an extension of time to file proof of compliance with the permit's conditions. She also conceded during oral argument before this court that she had actual notice of the canceled permit before expiration of the 60-day period to request administrative review.

response, Benson claimed that she properly petitioned for judicial review under NRS 533.450 and was not required to pursue administrative review as it would have been in vain and futile. Benson contended that even if she had petitioned the State Engineer for administrative review of the cancellation decision and the State Engineer issued a decision rescinding the cancellation, that decision would not provide her with an adequate remedy. Benson argued that pursuant to NRS 533.395(3), the State Engineer would be required to modify the permit's original 1960 appropriation date with an appropriation date reflecting the date of her 2013 administrative review. Benson claimed the modified appropriation date would thus affect her substantive rights in terms of priority to the water. She asserted that because she would lose her 1960 appropriation date and be required to seek judicial review regardless of the results from an administrative hearing, administrative review would have been futile.

The district court granted the State Engineer's motion to dismiss Benson's petition. In its order, the district court said that this court has not defined futile in the context of exhausting administrative remedies and that it was persuaded by caselaw from the California Court of Appeal. The district court adopted the California Court of Appeal's rule from *Doyle v. City of Chino*, which requires exhaustion of administrative procedures "unless the petitioner can positively state that the commission has declared what its ruling will be in a particular case." 172 Cal. Rptr. 844, 849 (Ct. App. 1981) (internal quotation omitted). Accordingly, the court decided that Benson had not proven that administrative review would have been futile because she did not positively state what the State Engineer's ruling would have been had she sought administrative review.

SUPREME COURT
OF
NEVADA

(O) 1947A

The district court further noted that Benson could have received some relief through reinstatement of her permit with a 2013 appropriation date following administrative review but acknowledged that the State Engineer is not statutorily authorized to reinstate the permit with the original appropriation date. The court also noted that by seeking judicial review before exhausting available administrative remedies, Benson undermined policy considerations, including the following: (1) having the matter heard by the State Engineer, who possesses expertise in water rights; (2) allowing development of a factual record necessary for meaningful judicial review; (3) providing an efficient process for the State Engineer to correct its own mistake; (4) encouraging adherence to administrative procedures before resort to the courts; and (5) preventing premature interruption of the administrative process. This appeal followed.

## DISCUSSION

The issue presented is whether a permittee who is aggrieved by the State Engineer's decision to cancel her water permit is required to exhaust available administrative remedies before seeking judicial review. Here, we review de novo the district court's order, which dismissed Benson's petition for judicial review for lack of jurisdiction due to Benson's failure to exhaust the statutorily required administrative remedies. *See Webb v. Shull*, 128 Nev., Adv. Op. 8, 270 P.3d 1266, 1268 (2012) (applying de novo review to questions of statutory interpretation); *Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009) (applying de novo review to an order granting a motion to dismiss for lack of subject matter jurisdiction).

*Statutory procedures applicable to the cancellation of water permits*

NRS 533.410 requires the Division of Water Resources, through the State Engineer, to cancel a landowner's water permit when the landowner fails to comply with its terms. If a permit is canceled, the permit holder may, within 60 days of the cancellation, file a written request for review at a public hearing before the State Engineer. NRS 533.395(2). The State Engineer, after considering evidence at the hearing, may "affirm, modify or rescind the cancellation." *Id.* When the State Engineer modifies or rescinds a canceled permit, the original appropriation date (or "priority date," as Benson refers to it) is "vacated and replaced by the date of the filing of the written petition with the State Engineer." NRS 533.395(3). Thus, Nevada law does not authorize the State Engineer to modify or reinstate a canceled permit with its original appropriation date. *See id.*

Further, "[t]he cancellation of a permit *may not be reviewed or be the subject of any judicial proceedings* unless a written petition for review has been filed and the cancellation has been affirmed, modified or rescinded" by the State Engineer. NRS 533.395(4) (emphasis added); NRS 533.450 (providing that a person aggrieved by a State Engineer's decision may seek judicial review); *see Howell v. Ricci*, 124 Nev. 1222, 1228, 197 P.3d 1044, 1048 (2008) (explaining that when the State Engineer renders a final, written determination that affects a person's interests that relate to the administration of determined rights, that decision may be properly challenged through a petition for judicial review).

*Exhaustion of administrative remedies is required before seeking judicial review of a State Engineer's decision*

"Ordinarily, before availing oneself of district court relief from an agency decision, one must first exhaust available administrative remedies." *Malecon Tobacco, LLC v. State ex rel. Dep't of Taxation*, 118 Nev. 837, 839, 59 P.3d 474, 475-76 (2002). This court has held that exhaustion is not required when administrative proceedings are "vain and futile" or when the "agency clearly lacks jurisdiction." *Engelmann v. Westergard*, 98 Nev. 348, 353, 647 P.2d 385, 389 (1982). Thus, a party may proceed directly to judicial review when the administrative proceedings would be futile. *State, Nev. Dep't of Taxation v. Scotsman Mfg. Co.*, 109 Nev. 252, 255, 849 P.2d 317, 319 (1993) (affirming a district court order granting summary judgment to a taxpayer seeking declaratory relief).

In *Scotsman Manufacturing*, Scotsman moved the district court to order the State to refund sales tax payments that it made under protest and that this court determined it was not required to pay. *Id.* at 253, 849 P.2d at 318. The district court ordered the State to refund the paid taxes plus interest. *Id.* On appeal, the State argued that the district court did not have jurisdiction to order the refund because NRS 374.640(1) and NRS 374.680 required Scotsman to seek a refund from the Department of Taxation within three years of making the payments. *Id.* at 254, 849 P.2d at 319. We explained that although Nevada law has a statutory procedure that requires the exhaustion of administrative remedies before petitioning for judicial review, "[u]nder certain circumstances, . . . the district court's jurisdiction attaches notwithstanding a party's failure to exhaust its administrative remedies." *Id.* at 254-55, 849 P.2d at 319. A circumstance that excuses the

exhaustion doctrine, we determined, is "where initiation of administrative proceedings would be futile." *Id.* at 255, 849 P.2d at 319. Based on the three-year statute of limitations, "[t]he statutory procedure offer[ed] Scotsman no relief at all." *Id.* at 255, 849 P.2d at 320. Thus, when the facts of a particular case prove that the agency is statutorily precluded from granting a party any relief at all, administrative proceedings are futile. *See id.*

In the instant case, Benson argues that, pursuant to NRS 533.395(3), petitioning for review with the State Engineer would be futile because even if the cancellation of her permit was rescinded, the State Engineer would be required to reinstate the water permit with a priority date of 2013, instead of its original priority date of 1960. Because the Diamond Valley Hydrographic Basin has been depleted, the State Engineer has denied all applications to appropriate groundwater for irrigation purposes since 1979. *See* State Engineer's Order No. 1226 (Mar. 26, 2013). Accordingly, Benson asserts administrative review was futile because she could only receive a permit with a 2013 priority date, which would still not allow her to appropriate any water and would thus amount to nothing more than a piece of paper.

Benson relies upon our holding in *Englemann v. Westergard*, 98 Nev. 348, 647 P.2d 385 (1982), to support her contention that she was not required to seek administrative review. But the facts of this case are distinguishable from *Englemann*, and thus its holding does not apply here. In *Englemann*, the State Engineer canceled Englemann's water permit due to his failure to comply with the permit's terms, but Englemann was unaware of the cancellation for over two years because he did not receive the State Engineer's notice that "his permits . . . were in poor standing and

subject to cancellation."[4]  *Id.* at 351, 647 P.2d at 387.  A month after learning of the cancellation, and approximately two years and two months after his permits were canceled, Englemann filed a petition for judicial review, which the district court dismissed.  *Id.*  On appeal, this court concluded that the district court erred when it failed to exercise subject matter jurisdiction.  *Id.*  We explained:

> We have held that where an aggrieved party *had no actual knowledge* that his permits were cancelled until after the expiration of the 30-day period within which to comply with the statute, it was not the intent of the Legislature to preclude judicial review of such an order or decision.

*Id.* at 352, 647 P.2d at 388 (emphasis added).  We concluded that Englemann was not required to exhaust the administrative remedies because his request for administrative review would have been "untimely and futile." *Id.* at 353, 647 P.2d at 389.

Unlike the petitioners in *Englemann*, Benson conceded that she received actual notice of the pending cancellation before the expiration of the 30-day period in which to request an extension to file the requisite documents with the State Engineer.  She also conceded that she received actual notice of the cancellation before the expiration of the 60-day period to request review.  Therefore, unlike in *Engelmann* and *Scotsman*, the limitations period did not prevent Benson from seeking administrative review.  And although Benson argues that administrative review would

---

[4]In compliance with NRS 533.410, the State Engineer sent its notice of cancellation to Englemann via certified mail. *Englemann*, 98 Nev. at 351, 647 P.2d at 387.  The post office returned the certified letter to the State Engineer as unclaimed. *Id.* at 351-52, 647 P.2d at 387-88.

not have offered her any relief, we disagree. We are not persuaded by Benson's claim that a water permit with an appropriation date of 2013 would afford her no remedy at all. Under NRS 533.395(2), following a public hearing, the State Engineer could have "modif[ied] or rescind[ed] the cancellation" and issued Benson a water permit with an effective date of 2013. NRS 533.395(2), (3). Although a water permit with a 2013 appropriation date effectively places Benson near the end of the line to appropriate water, this is a form of relief. We recognize that it is not the remedy that Benson prefers, but we do not consider administrative proceedings to be futile solely because the statute prevents the petitioner from receiving his or her ideal remedy through administrative proceedings. If a permit with a 2013 priority date did not allow her to appropriate sufficient water, seeking judicial review would have *then* been permissible. *See* NRS 533.395(4); NRS 533.450. We therefore hold that when NRS 533.395 authorizes the State Engineer to provide a party with a remedy, even when that remedy is not the remedy the party prefers, the doctrine of futility does not apply and excuse the party from complying with NRS 533.395(4)'s exhaustion requirement,[5] and the party must exhaust all available administrative remedies before seeking judicial review.

We recognize that by requiring a petitioner to prove that the administrative review process would provide "no relief at all," our holding

---

[5]NRS 533.395(4) states: "The cancellation of a permit may not be reviewed or be the subject of any judicial proceedings unless a written petition for review has been filed and the cancellation has been affirmed, modified or rescinded pursuant to subsection 2."

today defines Nevada's futility more narrowly than the federal courts' definitions, which focus on the adequacy of the remedy.[6] Such a strict standard is necessary in cases under NRS Chapter 533 because of the unique nature of water rights. *See Ruddell v. Sixth Judicial Dist. Court*, 54 Nev. 363, 367, 17 P.2d 693, 694 (1933) (holding that water law cases are "special in their character"). The strict standard is also warranted because the administrative review process requires a *public* hearing. NRS 533.395(2). The scarcity of water resources in our desert climate demands public scrutiny in water rights cases. *See Dep't of Conservation & Natural Res., Div. of Water Res. v. Foley*, 121 Nev. 77, 79, 109 P.3d 760, 761 (2005)

---

[6]*Compare State, Nev. Dep't of Taxation v. Scotsman Mfg. Co.*, 109 Nev. 252, 255, 849 P.2d 317, 320 (1993) ("The statutory procedure offers Scotsman *no relief at all* given the three-year period of limitations . . . ." (emphasis added)), *with Tesoro Ref. & Mktg. Co. v. Fed. Energy Regulatory Comm'n*, 552 F.3d 868, 874 (D.C. Cir. 2009) ("The futility exception is quite restricted and limited to situations when resort to *administrative remedies would be clearly useless.*" (emphasis added) (internal quotations omitted)); *Rose v. Yeaw*, 214 F.3d 206, 210-11 (1st Cir. 2000) ("A plaintiff does not have to exhaust administrative remedies if she can show that the agency's adoption of an unlawful general policy would make resort to the agency futile, *or that the administrative remedies afforded by the process are inadequate given the relief sought.*" (emphasis added)); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1316 (11th Cir. 2000) ("Thus far, our circuit has recognized exceptions only when resort to administrative remedies would be futile *or the remedy inadequate*, or where a claimant is denied meaningful access to the administrative review scheme in place." (emphasis added) (internal quotations omitted)); *and Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995) ("[B]are assertions of futility are insufficient to bring a claim within the futility exception, which is designed to avoid the need to pursue an administrative review that is *demonstrably doomed to fail.*" (emphasis added)).

SUPREME COURT
OF
NEVADA

(O) 1947A

(recognizing that the State Engineer must scrutinize the beneficial use of water rights due to "Nevada's arid geography"). Moreover, this stricter standard will provide the district court with a fully developed record and administrative decision, including factual findings by an administrative body with expertise on water appropriation. This will place the district court in a better position, acting in an appellate capacity, to determine issues such as whether a party has proved adequate grounds for having a permit restored with its original appropriation date. *See Malecon Tobacco, LLC v. State ex rel. Dep't of Taxation*, 118 Nev. 837, 840-41, 59 P.3d 474, 476 (2002) (noting that administrative agencies are generally in the best position to make factual determinations). Lastly, the stricter standard will provide the State Engineer with the opportunity to correct its mistakes and protect judicial resources. *See Mesagate Homeowners' Ass'n v. City of Fernley*, 124 Nev. 1092, 1099, 194 P.3d 1248, 1252-53 (2008) (explaining that the purpose of the exhaustion requirement is to allow agencies to correct their mistakes and conserve judicial resources).

*Equitable relief*

Benson additionally asserts that she was not required to seek administrative review because the State Engineer is not empowered to grant equitable relief; specifically, the State Engineer cannot reinstate her water permit with its original priority date. She relies upon this court's holding in *State Engineer v. American National Insurance Co.*, 88 Nev. 424, 498 P.2d 1329 (1972). However, this case is distinguishable from *American National*.

In *American National*, the State Engineer canceled a water permit because the permittee failed to file proof of application of the water to beneficial use by the set deadline. *Id.* at 425, 498 P.2d at 1330. The

permittee had filed every other required proof, completed the well and the pump, and put the water to beneficial use. *Id.* The district court found the following: (1) the permittee spent $35,000 to improve the land, (2) the State Engineer did not intend to approve new permits in the foreseeable future, (3) no one would be damaged by the permittee's appropriation of the water, and (4) the permittee's appropriation would provide increased tax revenues for Humboldt County. *Id.* at 425-26, 498 P.2d at 1330. Moreover, the State Engineer did not dispute that equity rested with the permittee. *Id.* Consequently, the district court granted equitable relief and reinstated the permit. *Id.* at 426, 498 P.2d at 1330. This court affirmed the lower court's decision, concluding that NRS Chapter 533 did not prohibit the district court from granting equitable relief when warranted. *Id.* In the instant case, Benson has only shown that the State Engineer will not approve new applications to appropriate water from the particular basin. Benson has not shown that she or her family have expended any funds toward improvements or completed any portion of the project, that the water was put to beneficial use, that a third party would not be harmed by her appropriation of water, or that such appropriation would benefit Eureka County.

The instant case is also distinguishable from *American National* because the Legislature amended NRS Chapter 533 since we decided that case. At the time of our decision in *American National*, NRS 533.395 did not require a permittee to request administrative review of a canceled permit before seeking judicial review. *See* 1981 Nev. Stat., ch. 44, § 3, at 114 (amending NRS 533.395 to allow the holder of a canceled permit to petition the State Engineer to review a canceled permit at a public hearing and precluding judicial review of a canceled permit if the

permittee did not first petition for the State Engineer's review). When American National filed its petition for judicial review, the relevant statute read:

> If, in the judgment of the state engineer, the holder of any permit to appropriate the public water is not proceeding in good faith and with reasonable diligence to perfect said appropriation, the state engineer may require at any time the submission of such proof and evidence as may be necessary to show a compliance with the law, and the state engineer shall, after duly considering said matter, if, in his judgment, the said holder of a permit is not proceeding in good faith and with reasonable diligence to perfect the said appropriation, cancel the said permit, and advise the holder of said permit of said cancellation.

1913 Nev. Stat., ch. 140, § 68, at 213 (enacting Nevada's water law statutes). At that time, American National did not have a remedy at law to address the deprivation of its water right. *See id.* Because Nevada law did not provide a remedy for American National, as the State Engineer was without discretion to review a permit cancellation, equitable relief through judicial review was appropriate. *See Am. Nat'l Ins. Co.,* 88 Nev. at 426, 498 P.2d at 1330. The difference between the statutes in force before 1981, when we decided *American National,* and in 2013, when Benson filed for judicial review of her canceled water permit, makes *American National* inapplicable to this case because administrative review pursuant to NRS 533.395(2) could have offered Benson relief. *See Smith v. Smith,* 68 Nev. 10, 22, 226 P.2d 279, 285 (1951) (concluding that the district court did not have jurisdiction in equity "where statutes in force required [the party] to seek his relief in another way").

Benson has not proven that the law does not provide her with an adequate legal remedy. NRS 533.395(3) allowed the State Engineer to rescind its cancellation of the permit and reissue a permit with a 2013 appropriation date. Benson opines that she would not be able to appropriate any water with such a permit because the well is overburdened and the State Engineer will not accept new permits to appropriate water from this source. However, Benson's unsupported suspicions that the remedy would have been inadequate are insufficient to excuse her noncompliance with NRS 533.395(2) and (4). District courts should not entertain a petition for equitable relief based upon a party's unproven supposition that the remedy at law is inadequate. Accordingly, the district court properly ruled that it could not grant Benson equitable relief.[7] *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.")

## CONCLUSION

We conclude that NRS 533.395 requires a party who is aggrieved by the cancellation of a water permit to exhaust all available administrative remedies pertaining to the State Engineer's decision on a

---

[7]In its order granting the State Engineer's motion to dismiss Benson's claims, the district court explained that it could not provide any equitable relief to Benson unless her water permit remained valid. The court did not cite to any authority to support its conclusion, and this court is not aware of any such requirement. Nonetheless, equitable relief was improper due to the existence of a statutory remedy. *See* NRS 533.395(2).

water permit before filing a petition for judicial review with the district court. Benson should have therefore filed a written request for the State Engineer to review its decision to cancel the trust's water permit at a public hearing before she sought judicial remedies. Accordingly, we affirm the decision of the district court.

_____, J.
Cherry

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering