PER CURIAM.
On November 8, 2001, Lee Thomas Do-byne [1] approached Ricky Heard, the assistant chief of police of Brent, Alabama, who was in his patrol car. After joining Heard in the patrol car, Dobyne requested that Heard “watch his back.” Heard recorded the conversation with Dobyne and reported the conversation, which Heard construed as an attempt to bribe him, to his chief and to the Alabama Bureau of Investigation (“ABI”). The ABI enlisted Heard’s aid in conducting a sting operation and had Heard tell Dobyne that he would agree to “watch his back.” Heard recorded several more conversations with Do-byne over the next five months and accepted five payments of $1,000 from him. On April 3, 2002, after Dobyne had paid Heard the April bribe, law-enforcement officers arrested Dobyne and, nearly simultaneously, executed search warrants on the home and the mobile home in which Dobyne appeared to be residing, which were owned by Dobyne’s father, Marvin Dobyne, and on the home of Dobyne’s sister, Katherine Dobyne. During the searches, law-enforcement officers seized seven automobiles; various items of personal property, which were inventoried on an eight-page list; and $3,000 in United States currency. When Dobyne was arrested, he had on his person $1,415; that money was seized by law-enforcement officers as well. The ABI also possessed the $5,000 in bribes that Dobyne had paid to Heard.
*509 In October 2005, Dobyne was tried and convicted of bribery, unlawful possession of a controlled substance, and unlawful distribution of a controlled substance. Do-byne was sentenced in January 2006 to several 99-year sentences and a life sentence. He is currently incarcerated.
On April 4, 2002, the State of Alabama filed a forfeiture petition regarding two parcels of real property, one 16-foot by 18-foot Sunview Champion Builder mobile home (TEN 416649), United States currency in the amount of $9,415,[2] one 1987 Chevrolet Camaro automobile (VIN 1G1FP21H3HF144909), one 1992 Hyundai Excel automobile (VIN KMHVF2279NU476328), one 1983 Buick Electra automobile (VIN 1G4AX69Y2CH482760), one 1985 Chevrolet Astro van (VIN 1GCCM15E3FB178834), one 1999 Pontiac Grand Am automobile (VIN 1G2NE14D2NM079170), one 1995 Chevrolet truck (VIN 2GBECC19K2S1145902), and one 1986 Nissan truck (VIN 1N6ND01S3GC362842) that the State argued were due to be forfeited pursuant to Ala.Code 1975, § 20-2-93. Dobyne, Marvin Dobyne, and Katherine Dobyne were each named as a defendant. The State alleged that Marvin Dobyne owned the two parcels of real property and the 1992 Hyundai Excel automobile and that Katherine Dobyne owned the 1983 Buick Electra automobile.
The trial court placed the forfeiture case on its administrative docket in August 2003 to await the conclusion of Dobyne’s criminal trial. In September 2006, Do-byne filed a motion seeking either to have the forfeiture petition set for a hearing or to have the seized property returned. In that motion, Dobyne argued that the personal property confiscated during the search of the property owned by his father was not specifically mentioned in the forfeiture petition and, therefore, should be immediately returned. In response to Do-byne’s motion, the State filed a motion to amend the forfeiture petition to include the items of personal property that had been confiscated during the searches; those items were identified on an eight-page inventory list that the State appended to its motion to amend. Despite Dobyne’s objection, which was based upon the State’s failure to timely institute forfeiture proceedings regarding those items as required by § 20-2-93(c), see Reach v. State, 530 So.2d 40, 41 (Ala.1988) (“a forfeiture proceeding not ‘instituted promptly” is ineffectual”), the trial court permitted the amendment. Because neither Marvin Dobyne nor Katherine Dobyne had answered the State’s petition, the State sought and received default judgments against each of them.
The State then filed a motion for a summary judgment as to Dobyne, to which it appended as exhibits five audiotapes of certain recorded conversations between Dobyne and Heard, partial transcriptions of those audiotapes, and the transcript of the criminal proceedings against Dobyne. Dobyne failed to respond to the summary-judgment motion, and the trial court entered a summary judgment in favor of the State. Dobyne appeals, arguing first that the trial court erred in allowing the State to amend the forfeiture petition, and, secondly, that the State did not prove that the property at issue was connected in any *510 way to a violation of the State’s controlled-substances laws.
Although the State does not raise this issue, we first consider whether Do-byne has standing to appeal from the trial court’s judgment insofar as it orders that certain items of property be forfeited. See Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala.2003) (noticing lack of standing ex mero motu); and State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) (indicating that standing is a jurisdictional prerequisite). “Standing ... turns on ‘whether the party has been injured in fact and whether the injury is to a legally protected right.’ Romer v. Board of County Comm’rs of the County of Pueblo, 956 P.2d 566, 581 (Colo. 1998) (Kourlis, J. dissenting).” Property at 2018 Rainbow Drive, 740 So.2d at 1027. We must determine, then, whether Dobyne has suffered an injury to a legally protected right in regard to each item of property that was ordered to be forfeited.
The evidence presented by the State indicated that Dobyne, in his criminal trial, disclaimed any interest in the two parcels of real property and the mobile home; Dobyne testified that that property was owned by his father, Marvin. The State, in fact, alleged that the real property was owned by Marvin. In addition, Dobyne testified that the personal property seized from the residences owned by his father, i.e., the personal property listed in the eight-page inventory appended to the motion to amend the State’s forfeiture petition, was also owned either by his father or, perhaps, by other persons who had left items in the residences. As noted earlier, the State’s petition alleged that Marvin Dobyne owned the Hyundai Excel automobile and that Katherine Dobyne owned the Buick Electra automobile. Therefore, based on the evidence presented in support of the State’s summary-judgment motion, Dobyne does not have an ownership interest in the two parcels of real property, the mobile home, the personal property listed on the eight-page inventory, the Hyundai Excel automobile, or the Buick Electra automobile.[3] Thus, the forfeiture of those items of property cannot have caused Dobyne an injury in fact to a legally protected right; therefore, we dismiss the appeal insofar as it relates to those items. The only items of personal property that Dobyne claimed an interest in were the 1987 Chevrolet Camaro automobile, the 1985 Chevrolet Astro van, the 1999 Pontiac Grand Am automobile, the 1995 Chevrolet truck, and the 1986 Nissan truck; we hold that Dobyne has standing to challenge the forfeiture of those items. In addition, because Dobyne lacks standing to object to the forfeiture of the personal property seized during the searches and identified on the eight-page inventory list,- we cannot consider his argument that the trial court erred by permitting the State to amend the forfeiture petition approximately five years after the petition had been filed.
The currency that was the subject of the forfeiture proceeding consisted of three separate amounts: $5,000 that *511 Dobyne paid as bribes, $8,000 seized from a large toolbox located behind the mobile home, and $1,415 seized from Dobyne’s person upon his arrest. Because Dobyne testified in his criminal trial that the mobile home and the toolbox located behind it were the property of his father, it appears that he does not claim the $3,000 seized from that toolbox as his personal property; in fact, Dobyne refers to that money as “the $3,000 seized during the search of Marvin’s property.” We conclude, therefore, that Dobyne considers the $3,000 to be his father’s property, and, thus, we hold that Dobyne does not have standing to challenge its forfeiture; therefore, we dismiss the appeal insofar as it relates to the $3,000 in United States currency seized from the toolbox. Dobyne does, however, claim the $5,000 in bribe money and the $1,415 in currency removed from his person at the time of his arrest; regarding those moneys, we hold that Dobyne has standing to challenge their forfeiture.
We now review the summary judgment forfeiting the currency and the automobiles owned by Dobyne. We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[SJubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).
Dobyne argues that the State failed to prove that the $1,415 seized from his person upon his arrest and that the $5,000 in bribe money was subject to forfeiture because, he asserts, the State presented no evidence that linked the currency to any violation of the State’s controlled-substances laws. The State presented evidence indicating that the $5,000 Dobyne used to bribe Heard to “watch his back” was intended to be “used ... to facilitate [a] violation of [the] law of this state concerning controlled substances.” § 20-2-93(a)(4). Dobyne failed to present any evidence indicating that a genuine issue of material fact existed regarding his intent to bribe Heard. Thus, we affirm the judgment insofar as it orders the forfeiture of the $5,000 in bribe money to the State.
However, when we consider whether the State presented evidence demonstrating that the $1,415 seized from Dobyne’s person was connected to drug activity, we reach the opposite conclusion. In its brief to this court, the State makes the general assertion that it met its burden of demonstrating that “the seized property was used or derived from [Dobyne’s] controlled substance violations” based on the *512 fact that Dobyne was convicted of crimes involving the possession and distribution of controlled substances, and it goes on to state that it “sufficiently connected [the seized property] to Dobyne’s criminal violations.” Although the State presented audiotapes of conversations Dobyne had with Heard, those conversations establish only that Dobyne was involved in the distribution of crack cocaine and marijuana and that he offered to pay and did pay Heard $1,000 per month to “watch his back” and to report any possible police attention that might be directed toward Dobyne. The transcript of Dobyne’s criminal trial also established that certain controlled substances, money, and numerous items of personal property were found at the mobile home and the house that Marvin Dobyne owned and that Dobyne had access to on a regular basis. However, the record contains no evidence indicating that the $1,415 in currency on Dobyne’s person at the time of his arrest was “furnished or intended to be furnished ... in exchange for a controlled substance in violation of any law of this state,” was “proceeds traceable to such an exchange,” or was “used or intended to be used to facilitate any violation of any law of this state concerning controlled substances.” § 20-2-93(a)(4). That is, the State failed to present evidence indicating that the money Dobyne carried on his person was derived from the sale of illegal drugs, was intended to be used to purchase illegal drugs, or was intended to be used in some way to facilitate Dobyne’s illegal-drug trade. Money cannot be seized and forfeited merely because the person to whom it belongs is a convicted drug dealer. The State must prove to a “reasonable satisfaction” an actual link between the money sought to be forfeited and a violation of the controlled-substances laws of this State. Thompson v. State, 715 So.2d 224, 226 (Ala.Civ.App.1997). Because the State failed to present the appropriate quantum of evidence with regard to the $1,415 seized from Dobyne’s person, we cannot agree that the State met its burden or that it was entitled to a summary judgment forfeiting the $1,415. We must therefore reverse the judgment insofar as it forfeited the $1,415 in currency seized from Dobyne’s person.
Dobyne further argues that the State failed to prove that five of the vehicles it seized when it executed the search warrant on Marvin Dobyne’s property were linked in any way to a violation of the State’s controlled-substances laws.
“In order to obtain the forfeiture of a vehicle pursuant to § 20-2-93(a)(5), Ala. Code 1975, the State must establish that the vehicle has been ‘used, or ... intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment’ of a controlled substance. ‘ “ ‘Under § 20-2-93 the State must establish a prima facie case for the seizure, condemnation, and forfeiture of the property.... The statute is penal in nature and, as such, should be strictly construed.’ ” ’ Ex parte McConathy, 911 So.2d 677, 681 (Ala.2005) (quoting Holloway v. State ex rel. Whetstone, 772 So.2d [475,] 476 [ (Ala.Civ.App.2000) ], quoting in turn State v. Smith, 578 So.2d 1374, 1376 (Ala.Civ.App.1991)). To justify the forfeiture of a vehicle, the trier of fact must be reasonably satisfied that the vehicle was used to illegally transport or to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance. Ex parte Dorough, 773 So.2d 1001, 1003 (Ala.2000).”
Kuykendall v. State, 955 So.2d 442, 444-15 (Ala.Civ.App.2006).
Although there is certainly some testimony in the transcript of Dobyne’s criminal trial that indicated that Dobyne had *513 traveled by automobile to pay the bribes to Heard and that Dobyne had bragged that he once had nine “rocks” of crack cocaine on him during a traffic stop, the makes and models of the vehicles in which Do-byne committed those acts is not contained in the record. No evidence in the record reflects that the seized vehicles themselves were found to contain drugs or drug paraphernalia. Nor did the State present evidence indicating that the seized vehicles were purchased with the proceeds of Do-byne’s illegal-drug trade or that they were furnished to Dobyne in exchange for a controlled substance. In short, the State presented evidence indicating that Dobyne was a drug dealer who had bribed a public official and that the vehicles had been seized during a search of the house and mobile home in which Dobyne had been living or had had access to on a regular basis. That evidence falls short of the required showing under § 20-2-93. The State failed to present evidence showing that no genuine issue of material fact existed concerning whether the vehicles sought to be forfeited were actually “used, or ... intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of any” controlled substances or that the vehicles were obtained by Dobyne as a result of a violation of the controlled-substances laws of the State. § 20-2-93(5); see also § 20-2-93(9). We therefore reverse the judgment insofar as it forfeited the 1987 Chevrolet Camaro automobile, the 1985 Chevrolet Astro van, the 1999 Pontiac Grand Am automobile, the 1995 Chevrolet truck, and the 1986 Nissan truck.
In conclusion, because Dobyne lacks standing to complain about the forfeiture of certain items, we dismiss the appeal insofar as it relates to the forfeiture of the two parcels of real property, the mobile home, the $3,000 in currency seized from the toolbox located behind the mobile home, the personal property identified on the eight-page inventory list, the 1993 Hyundai Excel automobile, and the 1983 Buick Electra automobile. We affirm the trial court’s summary judgment insofar as it forfeited the $5,000 in bribe money. However, in light of the State’s failure to present evidence of a link between Do-byne’s illegal-drug activities, on the one hand, and the $1,415 in currency seized from his person during his arrest, the 1987 Chevrolet Camaro automobile, the 1985 Chevrolet Astro van, the 1999 Pontiac Grand Am automobile, the 1995 Chevrolet truck, and the 1986 Nissan truck, on the other hand, we must reverse the trial court’s judgment insofar as it forfeits those items and remand the cause to the trial court for further proceedings.
APPEAL DISMISSED IN PART; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All the judges concur.

. The last name of the appellant and of certain members of his family is sometimes spelled in the record "Dobine.'' In his notice of appeal, the appellant spelled his last name “Dobyne”; therefore, in this opinion, we refer to the appellant and to certain members of his family by spelling their last name “Dobyne.”

. Although the State's forfeiture complaint sought to condemn "U.S. Currency in the sum of Ten Thousand, Four Hundred, Fifteen and no/100 ($10,415.00),” the actual amount of the money seized — $3,000 seized during the search of the residences, $1,415 seized from Dobyne's person at the time of his arrest, and $5,000 in bribes Dobyne paid to Heard — totals $9,415.

. We note that Dobyne phrases large portions of his argument as if he were presenting an argument on behalf of his father (and perhaps his sister); however, as a pro se litigant, Do-byne is prohibited from representing the interests of his father (or his sister) on appeal, because doing so violates the statute prohibiting the unauthorized practice of law, Ala. Code 1975, § 34-3-6. See Godwin v. State ex rel. McKnight, 784 So.2d 1014, 1015 (Ala. 2000) (“Although the law allows [a person] to file complaints pro se, it does not allow him to file a complaint on behalf of anyone else ...."); and Ex parte Ghafary, 738 So.2d 778, 779 (Ala. 1998) (“However, [the constitutional right to represent oneself] does not extend to the representation of interests other than those of the pro se litigant.”).