JOHANNE DICTOR, DBA CPCI, APPELLANT, v. CREATIVE MANAGEMENT SERVICES, LLC, DBA MC2, RESPONDENT.

No. 51778

February 4, 2010                                    223 P.3d 332

*Robert M. Apple & Associates* and *Robert M. Apple*, Las Vegas; *Law Offices of Cary L. Dictor* and *Cary L. Dictor*, San Leandro, California, for Appellant.

*Pico Rosenberger* and *James R. Rosenberger*, Las Vegas, for Respondent.

Before PARRAGUIRRE, C.J., HARDESTY and PICKERING, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider two legal doctrines: first, the application of the law-of-the-case doctrine, and second, the proper choice-of-law analysis for defenses to the subrogation of underlying tort claims.

When an appellate court explicitly or by necessary implication determines an issue, the law-of-the-case doctrine provides that the determination governs the same issue in subsequent proceedings in the same case. Because our unpublished order in a previous appeal involving these same parties and stemming from the same lower court case narrowly addressed a single issue, we conclude that the district court did not violate the law-of-the-case doctrine and the district court was not precluded from applying the Missouri Property and Casualty Insurance Guaranty Association Act, Missouri

Revised Statute section 375.772 (Mo. Rev. Stat. § 375.772), and other alternate legal defenses on remand. We also affirm the district court's choice-of-law conclusion, that the Missouri statute barring tort claims against an insured of an insolvent insurer precludes appellant CPCI's subrogation claims.

## FACTS

Creative Management Services, Inc., has its principal place of business in Missouri but provides services and support to trade shows in Las Vegas. In June 2000, Loews Corporation was a vendor at a trade show in Las Vegas, and its watches and other items valued at approximately $120,000 were stolen. Loews filed a property claim with its insurance carrier, Hartford Insurance Company, which paid the claim. Hartford then subrogated the claim to CPCI, a California corporation.

CPCI brought a subrogation claim against Creative asserting various causes of action, including negligence and conversion, for the loss of Loews's property. At the time of the trade show, Creative was insured by Reliance Insurance Company, which has since been declared insolvent.

In 2004, Creative filed its first motion for summary judgment. The district court granted the motion based on NRS 687A.095 in the Nevada Insurance Guaranty Association Act, which provides immunity from suits to an insured of an insolvent insurer. The district court concluded that the subrogation claim was barred because Creative was an insured of Reliance, which had been declared insolvent. CPCI appealed. Days prior to the scheduled oral argument in that appeal, an amicus curiae brief was filed asserting that, through a choice-of-law analysis, Mo. Rev. Stat. § 375.772, which also precludes suits against an insured of an insolvent insurer, should apply. In that appeal, we determined that NRS 687A.095 did not apply to this case because the claim was not a "covered claim" under NRS 687A.033, which requires that either the claimant or the insured be a resident of Nevada.[1] Therefore, we reversed the district court's summary judgment and remanded the matter for further proceedings. Our order, however, was silent regarding a choice-of-law analysis and the application of Mo. Rev. Stat. § 375.772.

On remand, Creative filed its second motion for summary judgment, asserting that because NRS 687A.095 is not applicable, the district court should apply a choice-of-law analysis and conclude that Mo. Rev. Stat. § 375.772 bars CPCI's suit against an insured of an insolvent insurer. After conducting a choice-of-law analysis

---

[1] CPCI v. Creative Management Services, Docket No. 44068 (Order of Reversal and Remand, January 12, 2007).

under *General Motors Corp. v. District Court*, 122 Nev. 466, 134 P.3d 111 (2006), the district court determined that Mo. Rev. Stat. § 375.772 applied and granted Creative's second motion for summary judgment. CPCI appeals.

## DISCUSSION

In this appeal, we must first determine whether, under the law-of-the-case doctrine, our previous unpublished order in this case precludes Creative from asserting Mo. Rev. Stat. § 375.772 as an additional statutory defense to the underlying tort claims. If the law-of-the-case doctrine does not bar Creative from asserting Mo. Rev. Stat. § 375.772, then we must determine whether the district court properly conducted a choice-of-law analysis and, thereafter, correctly applied Mo. Rev. Stat. § 375.772 to dismiss CPCI's complaint.

An order granting summary judgment is reviewed by this court de novo. *Ozawa v. Vision Airlines*, 125 Nev. 556, 560, 216 P.3d 788, 791 (2009). Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of any material fact. *Id.*

### The law-of-the-case doctrine

In this appeal, CPCI argues that the issue in the prior appeal broadly answered the question whether there was a statutory defense precluding the litigation of the underlying claims. If so, CPCI maintains that the law-of-the-case doctrine prevents this same issue from being argued to the district court again. Specifically, CPCI claims that our previous order—holding that NRS 687A.095 was not applicable—also resolved the vast horizon of possible statutory defenses that could have been raised in this case, including Mo. Rev. Stat. § 375.775, and required the district court to proceed to trial. We disagree.

The law-of-the-case doctrine provides that when an appellate court decides a principle or rule of law, that decision governs the same issues in subsequent proceedings in that case. *Hsu v. County of Clark*, 123 Nev. 625, 629, 173 P.3d 724, 728 (2007); *Wheeler Springs Plaza, LLC v. Beemon*, 119 Nev. 260, 266, 71 P.3d 1258, 1262 (2003). In order for the law-of-the-case doctrine to apply, the appellate court must actually address and decide the issue explicitly or by necessary implication. *Snow-Erlin v. U.S.*, 470 F.3d 804, 807 (9th Cir. 2006). However, the doctrine does not bar a district court from hearing and adjudicating issues not previously decided, *see id.*, and does not apply if the issues presented in a subsequent

appeal differ from those presented in a previous appeal. *Emeterio v. Clint Hurt and Assocs.*, 114 Nev. 1031, 1034, 967 P.2d 432, 434 (1998); *Bone v. City of Lafayette, Ind.*, 919 F.2d 64, 66 (7th Cir. 1990) ("Subjects an appellate court does not discuss, because the parties did not raise them, do not become the law of the case by default.")

Here, we conclude that the district court could entertain a renewed summary judgment motion based on an alternate statutory defense. Our previous order was narrow and strictly determined that NRS 687A.095 did not apply to this case because the claim was not a covered claim under NRS 687A.033, which requires that either the claimant or insured be a resident of Nevada. Neither CPCI nor Creative is a resident of Nevada. As a result, we ordered the district court to conduct further proceedings. Although the application of Mo. Rev. Stat. § 375.772 was presented in the amicus brief filed days prior to the oral argument in the previous appeal, our order did not explicitly or impliedly decide whether Mo. Rev. Stat. § 375.772 was applicable. Pursuant to the law-of-the-case doctrine, NRS 687A.095 cannot be applied as a statutory defense to the underlying claims. However, our prior order did not compel the district court to proceed to trial, nor did it preclude the district court from addressing alternate statutory defenses or other pretrial dispositional motions.[2] Because our previous order did not determine the applicability of Mo. Rev. Stat. § 375.772 or other possible legal defenses, we conclude that the law-of-the-case doctrine did not bar the district court from considering alternate legal defenses through another motion for summary judgment.[3] *See also Hoffman v. Tonnemacher*, 593 F.3d 908, 912 (9th Cir. 2010) (the rules do not prohibit successive summary judgment motions if appropriate).

*Choice-of-law analysis*

Because we conclude that the law-of-the-case doctrine does not bar consideration of Mo. Rev. Stat. § 375.772 as a statutory de-

---

[2]Notwithstanding appellant's argument in the briefs that our previous order broadly resolved all statutory defenses, at oral argument in this instant appeal, appellant acknowledged that our prior order would not preclude the district court from considering other statutory defenses, such as the statute of limitations, if such defenses were applicable.

[3]CPCI also argues that the application of Mo. Rev. Stat. § 375.772 was an affirmative defense that was not properly pleaded. We conclude that the language in Creative's answer that "any subrogation claim is barred by NRS 687A.095 and related statutes" is sufficient to meet the affirmative defense test outlined in *Clark County School District v. Richardson Construction*, 123 Nev. 382, 392, 168 P.3d 87, 94 (2007).

fense, we also conclude that a choice-of-law analysis by the district court was appropriate. The district court looked to *General Motors Corp. v. District Court*, 122 Nev. 466, 134 P.3d 111 (2006), as the guiding authority for a choice-of-law analysis; however, the district court failed to follow the analysis as outlined.

*General Motors Corp.* adopted the Restatement (Second) of Conflict of Laws as the relevant authority for Nevada's choice-of-law jurisprudence in tort cases and concluded that the most significant relationship test of section 6 of the Second Restatement governs a choice-of-law analysis, *"unless* another, more specific section . . . applies." *General Motors Corp.*, 122 Nev. at 468, 473, 134 P.3d at 113, 116 (emphasis added). Here, the district court immediately applied the section 6 factors without considering whether a "more specific section" of the Second Restatement applied.[4] This was error. A district court should not apply the section 6 factors until it has determined whether a "more specific section" of the Second Restatement applies.[5]

CPCI's subrogation claim sounds in tort, and to succeed on that claim, CPCI would be required to prove that Creative was negligent. "A subrogation claim arising from a tort . . . is properly characterized as a tort claim for choice of law purposes." *Federated Rural Elec. v. R.D. Moody & Associates*, 468 F.3d 1322, 1326 (11th Cir. 2006). We conclude that section 161 of the Restatement (Second) of Conflict of Laws, which addresses the defenses available in tort actions, is a "more specific section" that applies to this case and should be the starting point of a choice-of-law analysis.

---

[4]Restatement (Second) of Conflict of Laws section 6 provides in pertinent part:

> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
> > (a) the needs of the interstate and international systems,
> >
> > (b) the relevant policies of the forum,
> >
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> >
> > (d) the protection of justified expectations,
> >
> > (e) the basic policies underlying the particular field of law,
> >
> > (f) certainty, predictability and uniformity of result, and
> >
> > (g) ease in the determination and application of the law to be applied.

[5]We also note that courts are not bound to decide all issues in a case under the local law of only one state, but rather each issue should be separately considered and resolved by the applicable law of the potentially interested state. *See* Restatement (Second) of Conflict of Laws § 145 cmt. d (1971).

Section 161 of the Second Restatement declares that ''[t]he law selected by application of the rule of § 145 determines what defenses to the plaintiff's claim may be raised on the merits.'' However, section 161's comments distinguish between defenses raised on the merits of the plaintiff's claim and defenses that arise from the relationship of the parties. Section 161, comment e notes that defenses that excuse ordinary tort liability based on the relationship of the parties may be controlled by the local law where the parties are domiciled. Comment e also refers to section 156, comment f, which describes the exceptions to the choice of law for normal tort liability, recognizing that in certain situations an actor's liability may be relieved because of the parties' relationship and domicile in a state other than the state where the tortious conduct and injury occurred:

> Whether the actor is relieved from ordinary tort liability may, on occasion, depend upon some law other than that which determines whether his conduct is tortious. This is particularly likely to be true in a situation where the actor claims to be relieved from liability because of his particular relationship to the plaintiff, and the parties are domiciled in a state other than that in which the tortious conduct and resulting injury occurred.

Restatement (Second) of Conflict of Laws § 156 cmt. f (1971).

In adopting the Restatement (Second) of Conflict of Laws's analytical approach to control the outcome of a choice-of-law analysis, we determine that additional comments in the Second Restatement support the position that ''the local law of the state where the parties are domiciled, rather than the local law of the state of conduct and injury, may be applied to determine whether one party is immune from tort liability to the other.'' Restatement (Second) of Conflict of Laws § 145 cmt. d (1971); Restatement (Second) of Conflict of Laws § 156 cmt. f (1971) (the law of the state where the driver and passenger are domiciled will apply although the tortious conduct and injury occurred in another state); Restatement (Second) of Conflict of Laws § 167 cmt. c (1971) (the law of the state of the parties' domicile will likely have the greatest interest in the issue of whether tort claims survive the death of one of the parties); Restatement (Second) of Conflict of Laws § 168 cmt. b (1971) (whether a charitable corporation may assert the defense of charitable immunity may be determined by the local law of the state where the plaintiff is domiciled and defendant corporation has its principle place of business).

In this case, Mo. Rev. Stat. § 375.772 is not advanced as a defense to tort liability. Rather, the statute is a defense based on the relationship between an insured and an insolvent insurer. Creative

is an insured of an insolvent insurer, Reliance Insurance Company. Because Creative is domiciled in Missouri, it qualifies for protection under the Missouri Property and Casualty Insurance Guaranty Association Act. *See* Mo. Rev. Stat. § 375.772(2)(7)(b) (West 2002 & Supp. 2009) (requiring that the claimant or the insured be a resident of the state to qualify as a "covered claim"). We recognize that CPCI and Creative do not have a direct relationship; however, CPCI is the assignee of Hartford Insurance Company, an insurer whose claims against Creative are also subject to the Missouri Property and Casualty Insurance Guaranty Association Act. Although section 161, comment e implies that the parties' domicile should be shared in order for the local law of the domicile to control, in this case, Creative's domicile alone and CPCI's submission to the statutes of that domicile through its assignor, Hartford, are sufficient to invoke section 161, comment e and apply the Missouri Property and Casualty Insurance Guaranty Association Act.

Although the district court's choice-of-law analysis was procedurally flawed because it did not rely upon a "more specific section" of the Restatement (Second) of Conflict of Laws prior to conducting a section 6 analysis, we conclude that the district court's determination that Missouri law applied was correct, and we will not disturb the district court's judgment even though it was reached by relying on different grounds. *St. James Village, Inc. v. Cunningham*, 125 Nev. 211, 221, 210 P.3d 190, 196 (2009).

Creative's defense was based on Missouri's statutory bar to subrogation claims against an insured of an insolvent insurer. This defense required the district court to conduct a proper choice-of-law analysis under section 161 of the Second Restatement and apply the local law of at least Creative's domicile where the claimant's subrogation claim was subject to the Missouri Property and Casualty Insurance Guaranty Association Act. Because Creative is an insured of an insolvent insurer, we conclude that Mo. Rev. Stat. § 375.772 bars CPCI's subrogation claim against Creative. Therefore, we affirm the district court's grant of summary judgment.

PARRAGUIRRE, C.J., and PICKERING, J., concur.