131 Nev., Advance Opinion 94

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| BRYAN FERGASON,<br>Appellant,<br>vs.<br>LAS VEGAS METROPOLITAN POLICE<br>DEPARTMENT,<br>Respondent. | No. 62357<br><br>**FILED**<br><br>DEC 2 4 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY S. Young<br>DEPUTY CLERK |

Appeal from a district court summary judgment in a forfeiture action. Eighth Judicial District Court, Clark County; Doug Smith, Judge.

*Reversed and remanded.*

Bailey Kennedy and Dennis L. Kennedy and Paul C. Williams, Las Vegas, for Appellant.

Thomas Joseph Moreo, Chief Deputy District Attorney, Clark County; Marquis Aurbach Coffing and Micah S. Echols, Las Vegas, for Respondent.

---

BEFORE SAITTA, GIBBONS and PICKERING, JJ.

*OPINION*

By the Court, PICKERING, J.:

Bryan Fergason appeals the district court's entry of summary judgment in favor of the Las Vegas Metropolitan Police Department (the State), which resulted in the forfeiture of approximately $125,000 from his bank accounts. Because the State failed to present evidence showing an absence of genuine issue of material fact regarding whether the funds

15-39564

seized from Fergason's bank accounts were subject to forfeiture as proceeds attributable to the commission of a felony, the district court erred by granting summary judgment; and we reverse and remand for further proceedings.

I.

In 2010 Bryan Fergason was convicted of burglary, possession of stolen property, conspiracy to possess stolen property and/or to commit burglary, possession of burglary tools, and larceny. During the preceding criminal investigation, the State had located and seized, among other things, approximately $125,000 from bank accounts kept by Fergason at Bank of America. The State filed a complaint against the seized money in March 2007, pleading a single cause of action in forfeiture pursuant to NRS 179.1164(1). The complaint alleges that the money seized represents proceeds attributable to the commission or attempted commission of a felony.

The State served the forfeiture complaint and summons on Fergason, and he answered, affirming that he was a claimant to the property. The case was then stayed pending the outcome of criminal proceedings. Following this court's affirmance of Fergason's criminal convictions, *Fergason v. State*, Docket No. 52877 (Order of Affirmance, Aug. 4, 2010), the district court lifted the stay in the forfeiture proceedings, and the State moved for summary judgment four days later. After the State filed its motion, Fergason's attorney moved to withdraw from the case, and the motion was granted. Fergason filed his opposition to summary judgment in pro se while incarcerated. In his opposition, Fergason argues straightforwardly: "None of the cited to allegations in the Complaint or Motion for Summary Judgment indicate that the amounts

seized from Fergason's account were attributable to felonies allegedly committed by Fergason."

Following a hearing, the district court granted summary judgment in favor of the State. In its findings of undisputed fact, the district court recited the convictions in the criminal cases; and in its conclusions of law, the district court said, "[t]he Judgments of Conviction in the criminal cases have become final. The proof of the facts necessary to sustain the conviction are, therefore, conclusive evidence in this forfeiture action against [Fergason] and satisfy all elements of the forfeiture complaint." The court further stated that as to Fergason, "the money was seized from his bank account as proceeds from illegal activities." This appeal followed.

## II.

### A.

We review a district court's grant of summary judgment "de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (citing *GES, Inc. v. Corbitt*, 117 Nev. 265, 268, 21 P.3d 11, 13 (2001)). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." NRCP 56(c).

"If the moving party will bear the burden of persuasion, that party must present evidence that would entitle it to a judgment as a matter of law in the absence of contrary evidence." *Cuzze v. Univ. & Cmty. Coll. Sys.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007). Put more simply: "The burden of proving the nonexistence of a genuine issue of material fact is on the moving party." *Maine v. Stewart*, 109 Nev. 721,

726-27, 857 P.2d 755, 758 (1993) (citing *Shapro v. Forsythe*, 103 Nev. 666, 668, 747 P.2d 241, 243 (1987)).

When the party moving for summary judgment fails to bear his burden of production, "the opposing party has no duty to respond on the merits and summary judgment may not be entered against him." *Maine*, 109 Nev. at 727, 857 P.2d at 759 (reversing summary judgment where burden of production never shifted) (citing *Clauson v. Lloyd*, 103 Nev. 432, 435, 743 P.2d 631, 633 (1987) (reversing summary judgment where movant did not meet the test in NRCP 56)); *see* NRCP 56(e) (summary judgment burden shifts to the non-movant only when the motion is "made and supported as provided in this rule"). Because the State was the plaintiff and the movant, it was required to show that no genuine issue of material fact existed as to its claim for forfeiture. *Cuzze*, 123 Nev. at 602, 172 P.3d at 134.

The district court ruling on a motion for summary judgment "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) (applying rule to "clear and convincing" standard); *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992) (affirming summary judgment for defendant where plaintiff failed to show genuine issue of material fact as to fraud by clear and convincing evidence); *see also Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998); *Flowers v. Carville*, 310 F. Supp. 2d 1157, 1161 (D. Nev. 2004).

In this case the State's complaint consists of a single cause of action pursuant to NRS 179.1164(1), which provides that "[a]ny proceeds attributable to the commission or attempted commission of any felony" are property "subject to seizure and forfeiture in a proceeding for forfeiture."

NRS 179.1164(1)(a). "'Proceeds' means any property, or that part of an item of property, derived directly or indirectly from the commission or attempted commission of a crime." NRS 179.1161.

Nevada law is clear that forfeiture of funds seized from a bank account will not stand in the absence of evidence linking the money to criminal activity. *Schoka v. Sheriff, Washoe Cnty.*, 108 Nev. 89, 91, 824 P.2d 290, 291-92 (1992) (reversing forfeiture where there was "no evidence which traced any of the funds in the account to any criminal activity"). At the time the court decided *Schoka*, the State's burden of proof was by a preponderance of the evidence, and the burden is even higher today. As amended in 2001, NRS 179.1173(4) now requires the State to "establish proof by clear and convincing evidence that the property is subject to forfeiture," *see* 2001 Nev. Stat., ch. 176, § 1, at 874; Hearing on S.B. 36 Before the Senate Committee on the Judiciary (Statement of Sen. Mark A. James, Chairman, S. Comm. on Judiciary) (amendment raising the State's burden to clear and convincing evidence is designed to avoid "injustice" where government's proof is "not so compelling"), a burden that applies to each element of the claim. *See Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1260-61, 969 P.2d 949, 957-58 (1999) (citing *Bulbman*, 108 Nev. at 111, 825 P.2d at 592, for the proposition that each element of a fraud claim must be proven by clear and convincing evidence). Therefore, the State must establish by clear and convincing evidence (1) that a felony was committed or attempted, and (2) that the funds seized from Fergason's bank account are "attributable to" or "derived directly or indirectly from" the commission or attempt. NRS 179.1161; NRS 179.1164(1)(a); NRS 179.1173(4).

Clear and convincing evidence is a higher standard than proof by the preponderance of the evidence and requires "'evidence establishing every factual element to be highly probable.'" *In re Discipline of Drakulich*, 111 Nev. 1556, 1567, 908 P.2d 709, 715 (1995) (quoting *Butler v. Poulin*, 500 A.2d 257, 260 n.5 (Me. 1985)). Thus, to determine whether the State's motion was properly supported, we must assess whether the record contains evidence from which a reasonable jury could find it highly probable that the money seized from Fergason was attributable to the commission of a felony. We examine each argument offered by the State to determine whether it satisfied its burden.

1.

In Nevada, where a forfeiture plaintiff presents proof that the claimant has been convicted of a criminal offense and that the conviction is final, then such proof is "conclusive evidence of all facts necessary to sustain the conviction." NRS 179.1173(6). The State argued below that Fergason's convictions for burglary, larceny, and possession of stolen property provide conclusive evidence sufficient to satisfy its summary judgment burden because "[t]he cause of action set forth in this forfeiture action mirrors the criminal charges set forth in the criminal cases" and is "supported by the same facts." However, the State did not demonstrate that the source of funds in Fergason's bank account was "necessary to sustain" his convictions as required by NRS 179.1173(6), and in fact the record indicates otherwise.

Fergason's criminal informations detail the facts on which his burglary charge is premised, as well as catalog the tangible items on which his larceny and possession of stolen property charges are based. First, burglary—unlawful entering with intent to commit larceny—bears no "proceeds" as a matter of law; it concerns the act of unlawful entry and

does not require the acquisition of money or property. *See* NRS 205.060. Possession of stolen property, without more, likewise does not establish the funds in Fergason's bank accounts as the proceeds of those crimes but, rather, his possession of specific items of stolen property. *See* NRS 205.275.[1] And while Fergason's larceny charge allegedly include some money, in addition to property, and could have concerned property stolen and converted to money via sale, *see* NRS 205.220, the State presented the district court with no evidence even suggesting that it was. Without evidence that the property on which Fergason's larceny conviction was based had been converted to money, the State cannot begin to demonstrate both (1) that such money came to rest in Fergason's seized bank accounts and (2) that this evidence was "necessary to sustain" the conviction,[2] which is the predicate for applying NRS 179.1173(6).

In this case NRS 179.1173(6) does not apply to satisfy the State's summary judgment burden.

---

[1]Fergason's conspiracy conviction was based on his agreement to "commit burglary and/or possess stolen property," thus the same analysis governs. *See* NRS 199.480. In addition, because both the conspiracy charge and possession of burglary tools charge are gross misdemeanors, *see* NRS 205.080, "proceeds attributable to" these charges could not be a predicate for forfeiture under NRS 179.1164 because that statute requires connection to a felony. *See* NRS 179.1164(1)(a).

[2]Even if the State had shown that the property listed in the larceny count of Fergason's information had been converted to proceeds *and* placed in his bank account, whether those facts would be "necessary to sustain the conviction" so as to invoke NRS 179.1173(6) is unlikely but not evaluated here.

 

2.

The State further argues that this court's opinion affirming Fergason's criminal convictions constitutes law of the case, precluding him from contending that no evidence connects his convictions to the seized funds. Specifically, the State relies on the following two sentences of our order as "dispositive": "The officers who executed search warrants on Fergason's storage units, apartment, bank accounts, and safety deposit box also testified. These searches resulted in the discovery of evidence that directly or inferentially linked Fergason to the crimes of burglary and/or possession of stolen property." *Fergason v. State*, Docket No. 52877 (Order of Affirmance, Aug. 4, 2010).

Under the doctrine of the law of the case, "when an appellate court decides a principle or rule of law, that decision governs the same issues in subsequent proceedings in that case." *Dictor v. Creative Mgmt. Servs., LLC*, 126 Nev. 41, 44, 223 P.3d 332, 334 (2010); *Rebel Oil Co. v. Atl. Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998) (doctrine generally precludes a court from "'reconsidering an issue that has already been decided by the same court, or a higher court in the identical case'") (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).

Application of the doctrine requires that the appellate court "actually address and decide the issue explicitly or by necessary implication." *Dictor*, 126 Nev. at 44, 223 P.3d at 334 (citing *Snow-Erlin v. United States*, 470 F.3d 804, 807 (9th Cir. 2006)); *Rebel Oil Co.*, 146 F.3d at 1093. "'A significant corollary to the doctrine is that dicta have no preclusive effect.'" *Rebel Oil Co.*, 146 F.2d at 1093 (quoting *Milgard Tempering, Inc. v. Selas Corp.*, 902 F.2d 703, 715 (9th Cir. 1990), and rejecting application of law of the case where based on dicta).

In this case Fergason's bank account was not relevant to the crimes with which he was charged, as discussed above. Nor did our order in the criminal case relate them: We said, in the context of the conspiracy charge, that (1) officers who executed search warrants on various places including his bank testified, and (2) the totality of the searches resulted in discovery of evidence linking Fergason to the crimes. As it concerns the bank account, the court's order is a description, not a disposition, and therefore does not qualify for deference pursuant to law of the case. *See Rebel Oil Co.*, 146 F.3d at 1094 (explaining that where a court's statements are "better read as descriptions rather than dispositions" of claims, law of the case does not apply).

3.

Because the State has failed to establish that its summary judgment burden was satisfied by the fact of Fergason's convictions or by law of the case, it was required to present evidence below sufficient to allow a reasonable jury to find that it was highly probable the money seized from Fergason's bank account was related to a felony.

In the district court, the State first supported its motion with grand jury testimony by Tonya Trevarthen, the girlfriend of Fergason's co-defendant Daimon Monroe. According to her testimony,

- "probably the majority of everything taken [by police]" had been stolen, but Trevarthen had not read a list of the items seized,
- Daimon Monroe considered stealing to be his job,
- Monroe came home with cash,
- Monroe kept cash at the home he shared with her,
- Monroe deposited cash into Trevarthen's bank account via ATM,

- the cash described above came from burglaries and selling stolen items, and
- Monroe sold property from their home almost every weekend.

None of the attached grand jury testimony refers to Fergason or his bank account.

The State further presented testimony by Trevarthen from the trials of Fergason and Monroe. At trial Trevarthen repeated much of her grand jury testimony and added that

- she knew Fergason "pretty well" and saw him "pretty often,"
- Fergason and Monroe "never hid" that they committed burglaries and returned with stolen property,
- "cash would accumulate" in the home she shared with Monroe,
- she and Monroe deposited accumulated cash into her bank accounts,
- Monroe did not always have a job,
- income from her teaching job did not pay all the bills she and Monroe incurred,
- the home she shared with Monroe contained items of personal property that she did not pay for,
- she either knew or believed that "those items" had been stolen,[3]
- she withdrew $145,000 from her bank account and gave it to defendant Robert Holmes, and
- she characterized the money she gave Holmes as cash that was made by selling stolen property.

---

[3]The transcript does not make clear whether Trevarthen knew or believed items were stolen, or the exact items to which she refers.

SUPREME COURT
OF
NEVADA

(O) 1947A

None of the trial testimony offered by the State in support of summary judgment refers to Fergason's bank account, any possession of cash by Fergason, or any conversion of stolen property to proceeds by Fergason.[4]

In *Schoka v. Sheriff, Washoe County*, this court held that where "there was no evidence which traced any of the funds in the [claimant's] account to any criminal activity," the account was not forfeitable as the proceeds of crime under NRS Chapter 179. 108 Nev. 89, 91, 824 P.2d 290, 291-92 (1992). In that case, the State alleged that Schoka conducted a scheme of real estate fraud: specifically, that he would purchase properties with assumable loans, collect rent, and then fail to make the mortgage payments. *Id.* at 90-91, 824 P.2d at 291. The State sought forfeiture of an investment account and a Mercedes Benz vehicle; and following an evidentiary hearing, the district court ordered forfeiture. *Id.* We reversed, concluding that although the State presented "several witnesses who testified to fraudulent conduct on the part of Schoka,"

---

[4]In its answering brief on appeal, the State relies on pages of additional factual statements that were never presented to the district court below. Some statements are supported by materials in its three volumes of supplemental appendix, which consists of trial transcripts from the criminal cases that were never presented to the district court. Other statements are not supported at all. This evidence may not be considered on appeal: "Matters outside the record on appeal may not be considered by an appellate court." *Hooper v. State*, 95 Nev. 924, 926, 604 P.2d 115, 116 (1979); *Smith v. U.S. Customs & Border Prot.*, 741 F.3d 1016, 1020 n.2 (9th Cir. 2014) (refusing to consider claim that "rest[ed] on facts and documents that were never before the district court"). "Papers not filed with the district court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal." *Kirshner v. Uniden Corp.*, 842 F.2d 1074, 1077 (9th Cir. 1988) (citing *United States v. Walker*, 601 F.2d 1051, 1054-55 (9th Cir. 1979)); *see* NRAP 10(a) ("trial court record consists of the papers and exhibits filed in the district court").

forfeiture would not lie because the evidence relating to the car and account was "very limited." *Id.* at 91, 584 P.2d at 291.

The forfeiture decisions of other jurisdictions are in accord. In *Dobyne v. State*, an Alabama appellate court held that summary judgment was improper where the state had failed to present evidence "indicating that the money Dobyne carried on his person was derived from the sale of illegal drugs, was intended to be used to purchase illegal drugs, or was intended to be used in some way to facilitate Dobyne's illegal-drug trade." 4 So. 3d 506, 512 (Ala. Civ. App. 2008). That court announced that "[m]oney cannot be seized and forfeited merely because the person to whom it belongs is a convicted drug dealer. The State must prove to a 'reasonable satisfaction' an actual link between the money sought to be forfeited and a violation of the controlled-substances laws of this State." *Id.* at 512 (citing *Thompson v. State*, 715 So. 2d 224, 226 (Ala. Civ. App. 1997)); *McHugh v. Reid*, 324 P.3d 998, 1005-06 (Idaho Ct. App. 2014) (reversing partial summary judgment where, despite claimants' guilty pleas to manufacture and distribution of a controlled substance, state failed to establish "essential" element of forfeiture: "the required nexus between the vehicle [seized] and its use for the purpose of distribution or receipt of marijuana").

In *Ivy v. State*, an Indiana court reversed summary judgment due to lack of a connection between the seized money and criminal activity under similar circumstances. 847 N.E.2d 963, 967 (Ind. Ct. App. 2006). Ivy's money was seized from his person at the time of arrest for giving a false name to an officer. *Id.* at 964. Ivy's false informing charge was eventually dismissed, but he was convicted on separate drug charges arising six weeks after the first arrest. *Id.* at 964-65. The state presented

no evidence in the forfeiture case other than relating the circumstances of Ivy's first arrest. *Id.* at 967. The court concluded,

> In short, there was a complete lack of evidence that Ivy's money was connected to drug dealing. This is not to say that the State cannot establish the connection . . . at a full trial, but in the context of this summary judgment hearing, Ivy was deprived of his day in court.

*Id.*; *see also Bolden v. State*, 127 So. 3d 1195, 1201 (Ala. Civ. App. 2012) (following its decision in *Dobyne* to reverse summary judgment, concluding that "[e]vidence indicating that Bolden has sold drugs at some indefinite time in the past coupled with the discovery of $8,265 in his vehicle is insufficient to establish that the $8,265 was due to be forfeited").

The State cites *United States v. Thomas*, 913 F.2d 1111 (4th Cir. 1990), to argue that certain factors have been held "suggestive of proceeds of criminal activity," including possession of quantities of cash that vastly exceed income. *Thomas* does not guide this court's decision for two important reasons: First, no such evidence was presented by the State below, *see supra* (listing entire body of evidence presented to the district court), and the district court made no such findings. In fact, the district court made no findings other than recognizing the judgments of conviction; it relied *exclusively* on application of NRS 179.1173(6).

Second, *Thomas* was governed by a statutory scheme that was abrogated by the federal Civil Asset Forfeiture Reform Act (CAFRA) in 2000. *See United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002) (explaining that CAFRA was enacted "[i]n response to widespread criticism of [the existing proof] regime"). At the time of *Thomas*, the government's only burden in forfeiture cases was to show "probable cause" that the seized property was subject to forfeiture, then

the burden shifted to the *claimant*, to prove by the preponderance of the evidence that the property was *not* forfeitable. *Thomas*, 913 F.2d at 1114. Under CAFRA, however, the government bears the entire burden to prove all elements of forfeiture by a preponderance of the evidence. *$80,180.00*, 303 F.3d at 1184 (also noting that probable cause is a lower standard than preponderance of the evidence). As discussed above, Nevada requires even more than that—*clear and convincing evidence* of every element.

The Nevada statutory forfeiture scheme indicates that *One 1979 Ford 15V v. State*, 721 So. 2d 631 (Miss. 1998), provides the better result. In that case, the trial court determined forfeiture of bank accounts was proper where the proof showed that the claimant was convicted of felony drug crimes and had "amounts of cash in excess of what would normally be expected from the operation of a store or working at a factory," despite no evidence of "any drug sale or transaction that contributed proceeds to" the accounts. *Id.* at 636-37. The supreme court found the trial court's decision clearly erroneous, concluding there was "no nexus between the bank and the crime committed" by the claimant. *Id.* at 637.

Finally, the State suggests that Fergason's conspiracy conviction "raises the notion" that he was jointly and severally liable for forfeited proceeds of the conspiracy, relying on *United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000), and *United States v. Simmons*, 154 F.3d 765 (8th Cir. 1998). These two decisions were expressly rejected by the D.C. Circuit in a lengthy, detailed discussion. *United States v. Cano-Flores*, 796 F.3d 83, 91 (D.C. Cir. 2015).

We need not evaluate an inter-circuit disagreement, however, because the State offered no evidence that Fergason's bank account

contained proceeds of *anyone's* criminal activity, which is required under its own cited authority. *See Corrado*, 227 F.3d at 552 (prior to assigning joint and several liability to RICO coconspirators, district court must determine whether "the facts support a finding of a sufficient nexus between the property to be forfeited and the RICO violation"); *Simmons*, 154 F.3d at 771 (finding forfeiture proper as to amount district court determined was "'achieved through these specific wrongful acts,'" but not the total income of the codefendants' public relations firms); *cf. United States v. $814,254.76 in U.S. Currency*, 51 F.3d 207, 209 (9th Cir. 1995) (discussing federal provision allowing money in a bank account to be forfeited when not directly traceable to laundered funds *so long as* account previously contained funds traceable to illegal activity).

Had the State presented clear and convincing evidence that Fergason's bank account contained proceeds of Monroe's crimes, for example, the court could begin to determine whether joint and several liability should apply to cause forfeiture as to Fergason. However, it did not, speculating without record support that "Monroe had the ability to transfer funds to and from Trevarthen's Bank of America account, which would presumably include Fergason's accounts." For this and foregoing reasons, the State failed to establish it was entitled to judgment as a matter of law, and the burden to produce evidence never shifted to Fergason.

### B.

The State argues that Fergason lacks standing in this case because he failed to describe in his answer the interest he asserts in the seized bank funds. The State presented this argument for the first time on appeal, but we briefly address it because Fergason's standing is clear under Nevada law.

The primary authority cited by the State, *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629 (9th Cir. 2012), concerns federal, Article III constitutional standing. *Id.* at 637-38. Under federal forfeiture law, a party asserting standing must fulfill both statutory and constitutional standing requirements. *United States v. 17 Coon Creek Rd.*, 787 F.3d 968, 973-74 (9th Cir. 2015). Nevada, however, does not require constitutional standing where the Legislature has provided a statutory right to sue. *Stockmeier v. Nev. Dep't of Corr.*, 122 Nev. 385, 393-94, 135 P.3d 220, 226 (2006), *disavowed in part on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008); *accord Heller v. Nev. State Leg.*, 120 Nev. 456, 461 n.3, 93 P.2d 746, 749 n.3 (2004) ("State courts are not bound by federal standing principles, which derive from the 'case or controversy' component of the United States Constitution."). In particular, we have adopted the view that

> "[s]tanding is a self-imposed rule of restraint. State courts need not become enmeshed in the federal complexities and technicalities involving standing and are free to reject procedural frustrations in favor of just and expeditious determination on the ultimate merits."

*Stockmeier*, 122 Nev. at 393, 135 P.3d at 225 (quoting 59 Am. Jur. 2d *Parties* § 30 (2002)).

Instead, this court looks to "the language of the statute itself" to determine a party's qualification. *Id.* (reversing dismissal for failure to state a claim where open meeting law provided that "[a]ny person denied a right conferred by this chapter may sue"). Nevada has a "long-standing history of recognizing statutory rights that are broader than those afforded to citizens by constitutional standing." *Citizens for Cold Springs*

*v. City of Reno*, 125 Nev. 625, 633, 218 P.3d 847, 852 (2009) (following *Hantges v. City of Henderson*, 121 Nev. 319, 322-23, 113 P.3d 848, 850 (2005), to apply "the principle of statutory standing").

In *Cold Springs*, the plaintiff challenged an annexation decision by Reno pursuant to NRS 268.668, which confers standing on "any person . . . claiming to be adversely affected by" an annexation proceeding. 125 Nev. at 628-30, 218 P.3d at 849-50. There we held that under the statute, "only a claim of adverse effect is necessary for standing purposes"—whether the plaintiff could actually demonstrate an adverse effect did not relate to standing but rather to the merits. *Id.* at 633-34, 218 P.3d at 852-53; *see also id.* at 628, 218 P.3d at 849 (finding standing despite district court's characterization of claims of injury as "speculative").

Following our holding in *Cold Springs*, in this case only a *claim* to any right, title, or interest of record is necessary to establish standing under Nevada's forfeiture law. NRS 179.1171(7) provides that the proper parties to a Nevada civil forfeiture case are "the plaintiff and any claimant." A claimant is "any person who claims to have . . . any right, title or interest of record in the property or proceeds subject to forfeiture." NRS 179.1158(1).

Fergason alleged in the district court that the State impermissibly seized funds from a bank account registered in his name, therefore he is a person claiming to have a right, title, or interest of record in the property subject to forfeiture. Moreover, the State conceded Fergason's title to the bank account in its complaint, when it pleaded that officers "seized U.S. CURRENCY $124,216.36 from the account of BRYAN FERGASON . . . at Bank of America," thus it conceded Fergason's

standing under NRS 179.1158(1) and the "statutory standing" principle recognized by *Hantges* and confirmed in *Cold Springs*.

The State nevertheless contends that Fergason lacks standing because he did not comply with NRS 179.1171, which provides that "[t]he claimant . . . shall, in short and plain terms, describe the interest which the claimant asserts in the property." NRS 179.1171(6). The State cites no Nevada law holding or suggesting that the failure to strictly comply with NRS 179.1171(6) vitiates standing to contest a forfeiture, and we see nothing to suggest that Fergason's minor omission is fatal to his case.

First, as we said in *Stockmeier*, state courts are "'free to reject procedural [standing] frustrations in favor of just and expeditious determination on the ultimate merits.'" *Stockmeier*, 122 Nev. at 393, 135 P.3d at 225 (quoting 59 Am. Jur. 2d *Parties* § 30 (2002)). Second, NRS 179.1171(6) mirrors the "short and plain statement of the claim" language found in NRCP 8(a),[5] which courts, including this one, have long construed liberally, requiring only that the adverse party have notice of the claims being pleaded. *See Chavez v. Robberson Steel Co.*, 94 Nev. 597, 599, 584 P.2d 159, 160 (1978).

In this case, the State was on notice that Fergason claimed an interest in the money at issue because it seized the money from his bank account. In addition, the State recognized Fergason as a claimant when it named him as such in the complaint and caused him to be served with the forfeiture complaint pursuant to NRS 179.1171(5), which requires

---

[5]"A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." NRCP 8(a).

plaintiffs to serve "each claimant whose identity is known to the plaintiff or who can be identified through the exercise of reasonable diligence."

Ninth Circuit law also supports this conclusion: In *17 Coon Creek Road*, the court noted that courts may "'overlook'" the failure to comply with similar pleading requirements in federal forfeiture law. 787 F.3d at 974 (quoting *United States v. $11,500 in U.S. Currency*, 710 F.3d 1006, 1012 (9th Cir. 2013), and citing *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1262 (2d Cir. 1989), for the proposition that courts may "excus[e] technical noncompliance with procedural rules governing filing of claims on ground that claimant made sufficient showing of interest in property.")

The government argued in *17 Coon Creek Road* that the claimant lacked standing because he failed to respond to special interrogatories requesting him to describe his interest in the property. *Id.* at 971. The Ninth Circuit concluded,

> [B]ecause it cannot reasonably be disputed that Pickle's interest in the defendant property was sufficient to establish his *statutory* standing at the inception of the proceedings—recall that both parties alleged that Pickle was the "recorded owner" of the defendant property, and the government further alleged that Pickle and his son both resided on the property—Pickle's failure to respond to the government's special interrogatories did not alone vitiate his ability to maintain his claim.

*Id.* at 977; *see also id.* (citing *United States v. $154,853 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (reversing district court's striking of claim for noncompliance with same procedural requirements where

claimant "had adequately claimed to have earned the defendant funds through legitimate employment")).

In this case, where the State was unquestionably on notice that Fergason claimed an interest in the funds, to characterize his answer as defective for failing to further describe his interest would be nothing more than a "procedural frustration" hindering the just determination of the merits in this case. *See Stockmeier*, 122 Nev. at 393, 135 P.3d at 225.

Because the State failed to present evidence sufficient to satisfy its burden, the burden of production did not shift to Fergason, and the district court improperly granted summary judgment. Accordingly, we reverse and remand to the district court for further proceedings.

_____, J.
Pickering

We concur:

_____, J.
Saitta

_____, J.
Gibbons